**GENERAL ELECTRIC COMPANY and Electric Insurance Company, Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (RIZZO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 12, 1999.
Decided Sept. 7, 1999.
Reconsideration granted July 9, 1999.

Daniel V. DiLoretto, Philadelphia, for petitioner.

Pamela M. Schiller and Barbara E. Holmes, Pittsburgh, for respondent.

Before McGINLEY, J., FLAHERTY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.[1]

General Electric Company (Employer) petitions for review of an order of the Workers' Compensation Appeal Board that affirmed a decision of a workers' compensation judge (WCJ) granting John Rizzo's (Claimant) claim petition requesting benefits for a binaural hearing loss suffered as a result of long-term exposure to hazardous occupational noise.

Claimant has worked for Employer in various capacities for over thirty-two years and continues to work for Employer presently. On March 30, 1995, Claimant filed a claim petition, alleging that he suffered an occupational hearing loss resulting from his exposure to noise at work. Claimant identified the date of injury as December 20, 1994, the date he was examined by Stephen M. Froman, M.D. Employer denied the allegations and the matter was assigned to a WCJ.[2]

Claimant testified about his work history, indicating that since the age of twenty in 1962 and except for a period of military service between 1964 and 1966 he has worked for Employer. He further testified in detail that throughout the years of work for Employer he was exposed to noise from machines such as lathes, radial drills, tape machines, robotics and drills. He acknowledged that since July of 1994, he has worked as a gauge calibrator, describing it as a quieter job. Claimant also explained that for the last eight or nine years he wore hearing protection as required by Employer. Claimant acknowledged that he occasionally hunted and used a power mower and other power tools off the job.

Employer presented the testimony of Kathy Park, a registered nurse and nurse supervisor for Employer, who performed hearing tests for Employer. Alfred Faipler, Claimant's supervisor from January, 1992 until July, 1994, also testified. Mr. Faipler indicated that he made periodic checks to determine whether employees were compliant with Employer's mandated hearing protection program and that he never found Claimant without his earplugs. Employer also presented the testimony of Jeffrey Goller, Employer's manager of industrial hygiene, whose responsibilities included monitoring employee health relative to exposure at work to chemicals, gases, heat, noise and radiation, etc. Mr. Goller explained Employer's mandatory hearing protection program, but acknowledged that he did not routinely check whether the hearing protection supplied to employees fit properly.

Of particular note to our discussion of the issues raised in this case, we quote the WCJ's recitation of Mr. Goller's testimony:

> 10. . . . . Mr. Goller indicated that in 1976 to 1977, GE began its first formal program of mandatory hearing protec-

1. This Court granted Reconsideration in this case by order dated July 9, 1999.

2. In support of his claim petition, Claimant submitted into evidence the reports of Krishnan K. Nair, M.D., and Stephan M. Froman, M.D. In defense, Employer submitted the deposition testimony of Sidney N. Busis, M.D. Because the testimony and reports of these physicians have no impact on the issues raised in this case, a discussion of their respective opinions is omitted.

tion for employees with noise exposures above 90 decibels. Mr. Goller testified that he selects ear plugs with a high noise reduction rating. He stated that he does not routinely determine whether the noise protection provided to the employee fits properly. Except for changes that take place in the plant, Mr. Goller testified that areas in the plant are tested for noise level annually. Mr. Goller explained that GE mandates hearing protection for a time weighted average exposure of 85 decibels or above and has had that policy in place for approximately five or six years. **Mr. Goller reviewed sound levels for the area where the claimant worked in 1995 and indicated that that area had a time weighted average of 85.7 decibels.** [Citations to Mr. Goller's testimony omitted.]

(WCJ's decision, p. 5).

Following a similarly detailed recitation of the other evidence presented by the parties, the WCJ found as follows:

13. Based upon all the evidence of the record, this Judge makes the following findings:

a. The claimant has a permanent loss of hearing which has been medically established as an occupational hearing loss, caused by long term exposure to hazardous occupational noise. In so finding, this Judge has credited the testimony of the claimant wherein the claimant detailed his noise exposure throughout his employment at General Electric. In addition, this Judge has accepted the medical opinion of Dr. Froman over that of Dr. Busis. This Judge was unpersuaded by Dr. Busis' opinion that the claimant's hyperlipidemia caused his hearing loss and that the claimant could not have experienced occupational hearing loss when using hearing protection. The claimant worked for years in a noisy work environment prior to the use of hearing protection. **According to Mr. Goller, the industrial hygienist whose testimony is accepted as credible, testified [sic] as to the noise levels in the various plants at GE, indicated that the claimant worked for long periods of time exposed to noise above 80 to 85 decibels on a weighted average. Additionally, while it is true that General Electric provided hearing protection for its employees and in some instances, mandated such protection, Mr. Goller acknowledged that General Electric did not know the effectiveness of such hearing protection.** [Emphasis added.]

b. The testimony of Kathy Park is accepted as credible insofar as she testified as to the hearing test procedures performed at GE. Additionally, the testimony of Alfred Faipler who, for a time, was the claimant's supervisor, is also accepted as credible. While Mr. Faipler testified that he would "spot check" to make sure that the claimant used hearing protection, this Judge is not persuaded that the use of hearing protection precludes a medical finding of occupational hearing loss.

c. This Judge finds as fact that the claimant gave notice pursuant to Section 311 of the Pennsylvania Workers' Compensation Act [, 77 P.S. § 631,] on March 30, 1995, the date he filed the Claim Petition. As the claimant was first notified by Dr. Froman of the direct relationship between his hearing loss and his occupational exposure, on February 27, 1995, this Judge finds as fact that the notice provided to the employer was timely.

d. In accepting the opinions of Dr. Froman, this Judge finds as fact that the percentage of binaural impairment is 10.9375 percent.

(WCJ's decision, pp. 6–7). The WCJ concluded that Claimant had carried his burden of proof and ordered Employer to pay benefits. Employer appealed to the Board, which affirmed.

Employer now appeals to this Court,[3] arguing that the WCJ's findings are not supported by substantial evidence and are in conflict with Act 1 of 1995 (Act 1), Act of February 22, 1995, P.L. 1.[4] Employer argues that the WCJ refused to consider Claimant's use of protective devices that reduced the noise exposure, relied on Claimant's and his medical witness' subjective opinions rather than Employer's objective evidence, and disregarded Claimant's testimony concerning non-work-related factors that Employer believes impacted Claimant's hearing loss. Next, Employer argues that Claimant was not exposed to long-term hazardous occupational noise as set out in Section 306(c)(8)(x) of the Act, 77 P.S. § 513(8)(x),[5] in that its evidence showed that Claimant was not exposed to noise at or above permissible levels as defined by OSHA standards. Lastly, Employer argues that because the evidence proves that Claimant was last exposed to hazardous levels of noise in 1985, the claim petition was filed more than three years after Claimant's last exposure, thus, the filing of the claim petition does not fall within the three year statute of limitations provision of Act 1. *See* Section 306(c)(8)(viii) of the Act, 77 P.S. § 513(8)(viii).[6]

■ Although Employer's first issue presents arguments, posited as attacking the WCJ's findings under the guise of substantial evidence, much of what is ar-gued is in reality an attack on the WCJ's credibility determinations. As often stated by this Court, the WCJ is the sole arbiter of questions of credibility and may accept or reject the testimony of any witness in whole or in part. *Stevens v. Workers' Compensation Appeal Board (Consolidation Coal Co.)*, 720 A.2d 1083 (Pa. Cmwlth.1998), *petition for allowance of appeal granted*, 739 A.2d 546 (Pa.1999).

■ In particular, Employer argues that the WCJ did not consider Claimant's use of protective devices that Employer contends lessened Claimant's exposure. This argument rests on a credibility determination. The WCJ specifically noted that Mr. Goller did not know the effectiveness of the hearing protection. Therefore, the WCJ choose not to take the protective measures into consideration. The WCJ did not err in this regard. Nor did the WCJ err in relying on opinion evidence and testimony that Employer denotes as "subjective" over that of its witnesses' "objective" evidence. These are credibility decisions for the WCJ. *Stevens.*

With regard to Employer's second issue, Employer recognizes that pursuant to Section 306(c)(8)(x) of the Act, see footnote no. 5, it has the burden to put forward affirmative defenses concerning an employee's exposure to hazardous occupational noise.

---

**3.** Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988).

**4.** Act 1 contains the hearing loss amendments to the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626. These amended sections relevant to this case can be found at 77 P.S. §§ 25.4–25.6 and 513(8).

**5.** Section 306(c)(8)(x) of the Act states:

(x) Whether the employee has been exposed to hazardous occupational noise or has long-term exposure to such noise shall be affirmative defenses to a claim for occupational hearing loss and not a part of the claimant's burden of proof in a claim.

**6.** Section 306(c)(8)(viii) of the Act states:

(viii) Whenever an occupational hearing loss caused by long-term exposure to hazardous occupational noise is the basis for compensation or additional compensation, the claim shall be barred unless a petition is filed within three years after the date of last exposure to hazardous occupational noise in the employ of the employer against whom benefits are sought.

Employer argues that Act 1 requires that noise exposure must equate with or exceed the OSHA guidelines for hazardous noise set forth in Table G–16 of OSHA's Occupational Noise Exposure Standards (OSHA Standards), 29 C.F.R. § 1910.95, before a claim is compensable. Relying on this Table, Employer states that "it is clear under Act 1 that in order for hearing loss to be compensable, the claimant must have been exposed to noise at work of at least 90 decibels over an 8 hour day." (Employer's brief, p. 25).

Section 306(c)(8)(iv) of the Act, 77 P.S. § 513(8)(iv) states:

(iv) The percentage of hearing impairment for which compensation may be payable shall be established solely by audiogram. The audiometric testing must conform to OSHA Occupational Noise Exposure Standards, 29 CFR 1910.95 (relating to occupational noise exposure) and Appendices C, D, and E to Part 1910.95 (July 1, 1994).[7]

▆▆▆▆ This subsection of Act 1 requires that hearing impairment testing shall be done by audiogram and that the testing be done in a manner that comports with the federal standards. This section of the Act on its own does not require nor state that the level of exposure must be found to be above a certain level to be characterized as "hazardous" before a compensable hearing

loss can be established.[8] However, Section 306(c)(8)(x) of the Act (an employer's affirmative defense) in combination with the definition of "hazardous occupational noise" delineates the permissible noise exposure levels. *General Electric Co. v. Workers' Compensation Appeal Board (Bower)*, 734 A.2d 492 (Pa.Cmwlth.1999).

The definition of "hazardous occupational noise" states:

The term "hazardous occupational noise," as used in this act, means noise levels exceeding permissible noise exposures as defined in Table G–16 of OSHA Occupational Noise Exposure Standards, 29 CFR 1910.95 (relating to occupational noise exposure) (July 1, 1994).

Section 105.4 of the Act, 77 P.S. § 25.4.

The court in *Bower* stated that:

For an employer then to prove the affirmative defense that a claimant was not exposed to long-term hazardous occupation noise, it must establish:

- that claimant was not exposed to sound levels equal to or in excess of 90 dBA during the period the claimant is contending that he or she was exposed to a long-term hazardous noise;

*Id.* at 496.

Here, Employer does not dispute that Claimant was exposed to noise at work;

7.

Permissible Noise Exposure

| Duration per day, hours | Sound Level dBA slow response |
| --- | --- |
| 8 | 90 |
| 6 | 92 |
| 4 | 95 |
| 3 | 97 |
| 2 | 100 |
| 1 ½ | 102 |
| 1 | 105 |
| ½ | 110 |
| ¼ or less | 115 |

8. A review of 29 C.F.R.1910.95 in addition to the chart reproduced in the footnote above reveals that the federal regulations provide a minimum level of noise that requires an employer to implement a hearing protection program, including monitoring, testing and preventative measures, etc. The regulations set out the procedures, listing how noise exposure is computed, how to estimate the adequacy of hearing protection, who may perform the audiogram testing, and how and how often an audiometric test should be administer, etc.

Employer only disputes the level of noise exposure. By way of Dr. Froman's reports, Claimant provided evidence, believed by the WCJ, that met his burden under Section 306(c)(8)(i), 77 P.S. § 513(8)(i).[9] However, if Employer provided evidence, believed by the WCJ, that the noise level at work did not constitute hazardous occupational noise as defined in Act 1, Employer would meet its burden under the affirmative defense subsection and Claimant would not be entitled to hearing loss benefits. 77 P.S. § 513(8)(x).

■ Mr. Goller's testimony and the WCJ's findings regarding Mr. Goller's testimony are central to Employer's affirmative defense. A review of the WCJ's findings formulated from Mr. Goller's testimony compels a conclusion that no definitive finding was made as to the levels of Claimant's noise exposure at work. We also note that various documents in the record reveal threshold shifts in Claimant's hearing as tested by Employer. (R.R. pp. 259a, 282a). Another document, dated December 9, 1993, acknowledges these shifts and further indicates exposure levels up to 91 decibels. (R.R. p. 283a). Without a necessary finding by the WCJ taking into consideration all the evidence presented, we conclude we must remand to the Board with instructions to remand to the WCJ for findings concerning Claimant's levels of exposure. *DiJoseph v. Workmen's Compensation Appeal Board (St. Christopher's Hospital for Children)*, 128 Pa.Cmwlth. 359, 563 A.2d 598 (1989) (in the absence of a finding an appellate court may not infer that a finding was resolved in favor of the party who prevailed below).

Employer's final issue concerns the timeliness of the filing of Claimant's claim petition.[10] Relying on the three year statute of limitations section of Act 1, 77 P.S. § 513(8)(viii), which is set out in footnote no. 6, and the evidence Employer believes establishes a last exposure to hazardous noise in 1985, Employer contends that Claimant's claim is time barred. This question centers on whether the claim was filed within three years "after the date of last exposure to hazardous occupational noise...." 77 P.S. § 513(8)(viii). Obviously, Employer is contending that the earlier date to be used for statute of limitation purposes is the date of last exposure rather than the date the petition was filed.

Again Employer argues facts concerning the levels of exposure, contending that Claimant was not exposed to noise above OSHA's threshold levels. Although the WCJ chose to accept Claimant's description of his work environment, without a definitive finding as to Claimant's exposure

9. Section 306(c)(8)(i) of the Act states:
  (8)(i) For permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the percentage of impairment shall be calculated by using the binaural formula provided in the Impairment Guides. The number of weeks for which compensation shall be payable shall be determined by multiplying the percentage of binaural hearing impairment as calculated under the Impairment Guides by two hundred sixty weeks. Compensation payable shall be sixty-six and two-thirds per centum of wages during this number of weeks, subject to the provisions of clause (1) of subsection (a) of this section.
  The term "impairment guides," as used in the Act refers to the AMA Guidelines. Section 105.5 of the Act, 77 P.S. § 25.5

10. We note that the WCJ in Finding of Fact No. 13c found Claimant had provided timely notice pursuant to Section 311 of the Act. This section requires notice to be given within 120 days of the injury or the claim will be barred and has been interpreted to mean that claims must be filed within the 120–day period following the point in time where the claimant knew or should have know of his hearing loss. *NGK Metals Corp. v. Workmen's Compensation Appeal Board (Bailey)*, 698 A.2d 1365 (Pa.Cmwlth.1997). Employer does not take issue with the WCJ's finding; rather Employer contends that the WCJ did not address its argument with regard to the statute of limitations set out in Act 1. 77 P.S. § 513(8)(viii).

**858**

levels we are unable to decide the merits of the parties' arguments on this timeliness issue. We, therefore, direct that the WCJ on remand make findings relevant to Claimant's last date of exposure to hazardous occupational noise as defined in Act 1. If Claimant was not exposed to hazardous occupational noise within three years of the date on which he filed his claim petition, Claimant's claim was untimely filed. However, if Claimant was exposed to hazardous noise within the three years period prior to filing his claim petition, then Claimant's petition was timely filed and he should receive benefits.

For the reasons stated above, we vacate the Board's order and remand the case to allow the WCJ to formulate the necessary, additional findings of fact in accordance with the foregoing opinion.[11]

### ORDER

NOW, September 7, 1999, the order of the Workers' Compensation Appeal Board, at No. A97–3069, dated November 16, 1998, is vacated and the case is remanded for proceedings consistent with this opinion. The request for attorney's fees is denied.

Jurisdiction is relinquished.

---

11. Claimant requests attorney's fees pursuant to Pa. R.A.P. 2744(1), which permits this Court to impose an award of reasonable counsel fees against a party for pursuing a frivolous appeal. Claimant makes this request because he believes that the only issues raised by Employer attack the credibility determinations made by the WCJ. Although we conclude that a portion of Employer's argument does dispute the WCJ's credibility determinations, we recognize that Employer also raised issues that impact Act 1 and the way this Court has most recently interpreted some of Act 1's subsections. Therefore, we refuse to grant Claimant's request for attorney's fees.