USX CORPORATION, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (WAY),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 17, 1999.

Decided June 7, 2000.

Deborah A. Rocco, Philadelphia, for petitioner.

Fred M. Feder, Philadelphia, for respondent.

Before PELLEGRINI, J., FRIEDMAN, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

USX Corporation (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed as amended the order of a workers' compensation judge (WCJ) that granted hearing loss benefits to William Way (Claimant).

Claimant began working for Employer in 1964 and continues to work for Employer presently. On August 4, 1995, Claimant filed a claim petition alleging that he suffered an occupational hearing loss as a result of long term exposure to hazardous occupational noise and acoustic trauma. Employer denied the allegations and the case was assigned to a WCJ.

Claimant testified by way of deposition on his own behalf, outlining his job history and the types of noise to which he was exposed. He also submitted the deposition testimony and report of Anne A. McCarter, M.D., who examined Claimant on October 28, 1997. Dr. McCarter testified that Claimant sustained a 22.8 percent hearing impairment as calculated under the AMA Guides, which was caused by exposure to long term occupational noise. (WCJ's Finding of Fact No. 8).

Employer offered into evidence a report authored by Lee Rowe, M.D., who opined that Claimant sustained a 24.4 percent sensorineural hearing impairment under the AMA Guides, but that he attributed the hearing loss to presbycusis.[1] Employer also submitted a report from Joseph Sataloff, M.D., who believed that the audiograms performed by Dr. McCarter and Dr. Rowe were not valid measurements of Claimant's hearing loss.

In addition to accepting Claimant's testimony as credible, the WCJ formulated the following pertinent findings of fact:

11. The testimony and opinions of Dr. McCarter are persuasive and accepted as credible, given the greater weight for belief over the opinions and testimony of Dr. Rowe and Dr. Sataloff.

Dr. McCarter's opinion [sic] the Claimant has a 22.8% hearing impairment as calculated under the AMA guidelines caused by the Claimant's long term exposure to hazardous, occupational noise while working for USX is credible. Dr. McCarter's audiometric testing is reliable, accurate and further accepted as credible. When the opinions of Dr. Rowe and Dr. Sataloff conflict with the opinions of Dr. McCarter, Dr. McCarter's observations on examination, audiological evaluations and audiometric testing and opinions are given the greater weight for belief.

12. The Claimant suffered a permanent binaural sensorineural hearing loss amounting to 22.8% caused by exposure to hazardous occupational noise while in the course and scope of employment with the Employer USX.

13. The Claimant did not have actual knowledge of his hearing loss and its relationship to his employment with the Employer until October 28, 1997 [date of Dr. McCarter's examination].

(WCJ's decision). Based on his findings, the WCJ granted Claimant's petition, concluding that Claimant had proved that he sustained a 22.8 percent impairment caused by his exposure to noise at work. As part of the WCJ's order, he directed the payment of 59.28 weeks of compensation to Claimant and 10% per annum interest on all deferred and unpaid compensation.[2] Although the WCJ did not specifically provide a date on which the

---

1. Presbycusis is defined as the "loss of ability to perceive or discriminate sounds as a part of the aging process...." Stedman's Medical Dictionary 1254 (25 th ed.1990).

2. Recognizing that Employer failed to submit a wage statement during the proceedings, in his decision, the WCJ required Employer to submit a wage statement that would form the basis for the parties' determination of the rate of compensation to be paid to Claimant.

interest should begin to accrue, Finding of Fact No. 13 was interpreted by Employer to mean that the operative date was October 28, 1997.

Employer appealed to the Board and raised a number of issues, including the contention that the WCJ's findings were not supported by substantial evidence in that Employer can not be held liable for the portion of Claimant's hearing loss that is not work-related, i.e., Claimant's hearing loss as measured by a bone conductive audiogram. Employer also alleged that the WCJ erred in awarding interest from October 28, 1997, the date on which Dr. McCarter examined Claimant.

After review, the Board essentially affirmed the WCJ's order, but amended it to reflect an award of interest to begin March 7, 1995, a date which the Board inexplicably concluded fell twenty-one days after Employer received notice by way of the filing of the claim petition on August 4, 1995.[3] The Board then remanded the matter for a calculation of Claimant's weekly wage and the corresponding weekly compensation rate for 1995.

Employer now appeals to this Court,[4] arguing that the Board erred in concluding that: (1) Claimant was entitled to interest from March 7, 1995, and (2) Claimant was entitled to benefits for that portion of his hearing loss not causally related to his work.

Employer first contends that since the WCJ found that Claimant did not have actual knowledge of his hearing loss and its relationship to his work until October 28, 1997, the date of Dr. McCarter's examination, Claimant could not have satisfied his burden of proof at the time he filed his petition. In other words, Claimant did not have the requisite medical evidence to support his 22.8 percent hearing loss resulting from his noise exposure at work until the doctor so informed him. Thus, Employer argues that the Board's decision to impose interest from the time Claimant filed his claim petition in 1995 is in error, as is any date earlier.

We first note that the hearing loss portion of Act 1 of 1995 (Act 1)[5] does not contain any provision for the payment of interest. Therefore, we look to Section 406.1 of the Act,[6] which provides that:

The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability. Interest shall accrue on all due and unpaid compensation at the rate of ten per centum per annum.

Despite the language of Section 406.1, referencing notice to the employer as the date that triggers the payment of compensation benefits, Employer relies on *Carlettini v. Workers' Compensation Appeal Board (City of Philadelphia)*, 714 A.2d 1113 (Pa.Cmwlth.1998), a disfigurement

---

3. If, as the WCJ states, the claim petition was received by the Bureau of Workers' Compensation on August 4, 1995, twenty-one days later would fall on August 25,1995, not March 7, 1995, a date months prior to the filing of the claim petition. In fact, Claimant avers in his claim petition that his date of injury was July 26, 1995, a date that falls more than four months after the date the Board ordered the award of interest to begin.

4. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

*General Electric Co. v. Workers' Compensation Appeal Board (Bower)*, 734 A.2d 492 (Pa. Cmwlth.1999), *petition for allowance of appeal denied*, 561 Pa. 679, 749 A.2d 473 (803 M.D. Alloc. Dkt. 1999, January 5, 2000).

5. Section 306(c)(8) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(8). This section was amended by Act 1, Act of February 23, 1995, P.L. 1, 77 P.S. § 513(8), and contains the hearing loss amendments, which apply to the claim presently before this Court.

6. Section 406.1 was added by the act of February 8, 1972, P.L. 25, and was amended by the act of July 2, 1993, P.L. 190, 77 P.S. § 717.1.

case, to support its position that notice via the claim petition was insufficient in a hearing loss case. The *Carlettini* court explained that:

[T]he purpose of statutory interest is not to penalize an employer; rather, it is to provide additional compensation to a claimant for the delay during which an employer has use of funds otherwise due to claimant. Thus, *the imposition of statutory interest ... is solely dependent upon whether a right to compensation was established.* Therefore, our inquiry initially focuses on if, and when, a claimant establishes a right to compensation. [Emphasis added and citations omitted.]

*Id.* at 1114–15. In order to determine when the claimant in *Carlettini* established his right to compensation, the court examined Section 306(c)(22) of the Act, 77 P.S. § 513(22), and set forth what constituted the claimant's burden when seeking compensation for disfigurement. The court held that the claimant had not established his right to compensation until the WCJ viewed the scar, concluding that only at that point in time had the claimant carried his burden of proving permanency, and that as a result, interest only began to accrue from that date forward.

Based on *Carlettini*, Employer here contends that at the time Claimant filed his claim petition in 1995 he had not yet established his right to compensation. In fact, at that time Claimant did not yet know the extent of his hearing loss or that it was work-related because he had not received medical information that would satisfy his burden of proof. That information was not available to Claimant until Dr. McCarter examined him in 1997.

In response, Claimant argues that notice to Employer (filing of claim petition) is the operative date. Claimant also contends that *Carlettini* is not applicable because it is a disfigurement case. However, we note that the hearing loss provisions are a part of Section 306(c) of the Act, a section that establishes a schedule of compensation for particular classes of injuries, namely, specific loss injuries, which include disfigurement injuries like the one at issue in *Carlettini* and hearing loss cases like the one presently before this Court. Therefore, we conclude that the court's analysis in *Carlettini* applies to hearing loss cases as well as disfigurement cases. This is particularly so because these specific loss injuries result in awards not intended to compensate a claimant for a loss of earning power.

We now turn our attention to a claimant's burden of proof under the hearing loss provisions of Act 1. In order to establish a right to compensation, a claimant has the burden of proving that he has sustained a permanent loss of hearing that is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise. Section 306(c)(8)(i) of the Act, 77 P.S. § 513(8)(i). Apparently, Claimant believed he suffered from a work-related hearing loss in 1995 and filed his claim petition at that time. Although the filing of the petition constituted notice to Employer that Claimant was seeking compensation benefits for his loss of hearing, it did not establish Claimant's right to compensation. Therefore, pursuant to *Carlettini*, only when Claimant had evidence that he had a permanent, work-related loss of hearing was compensation due. Until that time Employer would not know if the loss would be compensable. Only from that point forward would interest become due on any unpaid compensation.

Moreover, Employer concedes that *Socha v. Workers' Compensation Appeal Board (Bell Atlantic PA)*, 725 A.2d 1276, 1281 (Pa.Cmwlth.1999), *petition for allowance of appeal granted*, 560 Pa. 753, 747 A.2d 373 (241 W.D. Alloc. Dkt. 1999, November 8, 1999), holds that "[a] claimant cannot be charged with the knowledge that he or she has suffered a compensable partial hearing loss until the claimant is informed by a physician or other health care provider that the permanent binaural

hearing impairment may exceed, or in fact does exceed, ten percent...."[7] Although in *Socha* the court resolved an issue whether timely notice was provided to the employer, this statement of the law applies to the issue presently before this Court. This is so because the *Carlettini* court indicated that a claimant's injury could be deemed compensable at a time earlier than the date on which the WCJ viewed the scar. The *Carlettini* court recognized that the claimant could have presented medical evidence that may have established an earlier date of permanency, rather than waiting for the WCJ's determination upon viewing the scar.

■ Accordingly, we conclude that the Board incorrectly amended the WCJ's order. We hold that pursuant to *Socha* and *Carlettini* Claimant established a compensable hearing loss on October 28, 1997, the date of Dr. McCarter's examination, and that interest began to accrue as of that date.

■ Employer's second argument centers on the difference between a sensorineural hearing loss as measured by a pure tone air conduction audiogram and a conductive hearing loss as measured by a bone conduction audiogram, the latter of which Dr. McCarter acknowledged on cross-examination could not be the result of an occupationally induced hearing loss.[8] In other words, Employer argues that Dr. McCarter overstated Claimant's work-related hearing loss, because she failed to deduct for a non-work-related conductive hearing loss. Moreover, because Section

306(c)(8)(vi) of Act 1, 77 P.S. § 513(8)(vi), provides that an employer is "liable only for the hearing impairment caused by such employer," Employer contends that the WCJ erred in accepting the 22.8 percent hearing impairment without deducting the amount of impairment not attributed to the work-related cause.[9]

Based on Dr. McCarter's testimony, which was found credible, the WCJ formulated Finding of Fact No. 8 that we referenced above and quote here in its entirety:

8. The testimony of Anne McCarter, M.D., has been reviewed and considered in its entirety. Dr. McCarter, based on her October 28, 1997 evaluation of the Claimant, obtained a occupational history and elicited presenting complaint as well as performing audiometric testing of the Claimant, indicating the Claimant had a binaural sensorineural hearing loss which amounted to a 22.8% hearing impairment as calculated under the AMA guidelines. Dr. Carter opined that Claimant's permanent sensorineural hearing loss was caused by long term *occupational noise exposure while the* Claimant was working for the Employer USX.

Dr. McCarter further opined that Claimant suffered from a conductive hearing loss which was not work related and which was not significant conceding the Claimant could have an 18.5% hearing impairment if the scores in his bone conductive audiogram were used instead

---

7. A calculation of hearing loss equal to or less than ten percent is not compensable. Section 306(c)(8)(iii) of Act 1, 77 P.S. § 513(8)(iii).

8. Dr. McCarter testified that the air conduction testing, which uses headphones, tests the function of the auditory nerve and the conduction of sound through the eardrum and the little bones that conduct sound to the nerve. Dr. McCarter also explained that the bone conduction testing evaluates whether a difference exists between the air testing and the bone testing, which would show an abnormality in the conductive mechanisms themselves.

9. The complete text of Section 306(c)(8)(vi) of Act 1 states that:

(vi) An employer shall be liable only for the hearing impairment caused by such employer. If previous occupational hearing impairment or hearing impairment from nonoccupational causes is established at or prior to the time of employment, the employer shall not be liable for the hearing impairment so established whether or not compensation has previously been paid or awarded.

of scores of his pure tone air conduction audiogram.[10]

(WCJ's decision).

Essentially, Employer argues that deductions for conductive hearing loss are permitted under Act 1. The court's reasoning in *USX Corporation v. Workers' Compensation Appeal Board (Rich)*, 727 A.2d 165 (Pa.Cmwlth.1999), *petition for allowance of appeal granted*, 560 Pa. 715, 743 A.2d 925 (268 W.D. Alloc. Dkt., September 28, 1999), is instructive on this issue. The *Rich* court held that the plain language of Act 1 does not allow for an age-related deduction from the total percentage of hearing impairment. In so holding, the *Rich* court discussed the interpretation of subclause (vi), reasoning that that section upheld the "principle that an employer is responsible for a disability caused by a combination of work-related and non-work-related factors if the work-related factors were a substantial contributing factor to the injury . . . ." *Id.* at 166. The *Rich* court did note, however, that "if the employer can show that the hearing loss was caused by a non-work-related injury or disease, it is not liable for that portion of the hearing loss . . . ." *Id.* at 167.

After reviewing the record, we conclude that Employer's reliance on Dr. McCarter's testimony to prove a non-work-related cause for hearing loss is misplaced. Even if we accept the WCJ's characterization of the doctor's testimony, Employer overlooks the WCJ's finding that Claimant's conductive hearing loss is not significant. Moreover, the doctor's testimony in which she opines that Claimant sustained a 22.8 percent sensorineural hearing loss caused by long-term occupational noise exposure is the measurement accepted by the WCJ. As this Court has often stated, the WCJ is the sole arbiter of questions of credibility and may accept or reject the testimony of any witness in *whole or in*

part. *General Electric Co. v. Workers' Compensation Appeal Board (Rizzo)*, 737 A.2d 852 (Pa.Cmwlth.1999). Therefore, we conclude that the WCJ did not err in accepting this testimony as the basis for his findings of fact and the resulting conclusions. Employer simply failed to prove that a non-work-related cause impaired Claimant's hearing to an extent that required a deduction.

Accordingly, we vacate the Board's order with regard to its award of interest. Rather, we order the award of interest on any unpaid compensation, which became due after Claimant's examination by Dr. McCarter, i.e., as of October 28, 1997. In all other respects, we affirm the Board's order.

### ORDER

NOW, June 7, 2000, the order of the Workers' Compensation Appeal Board, at No. A99–0383, dated August 11, 1999, is vacated with regard to its award of interest. Interest is awarded on any unpaid compensation that became due as of October 28, 1997. In all other respects, the Board's order is affirmed.

FRIEDMAN, Judge, concurring.

I agree with the result reached by the majority. However, unlike the majority, I would not rely on *Socha v. Workers' Compensation Appeal Board (Bell Atlantic PA)*, 725 A.2d 1276, 1280–81 (Pa.Cmwlth. 1999), *appeal granted*, 560 Pa. 753, 747 A.2d 373 (No. 241 W.D. Alloc. Dkt. 1999, filed November 8, 1999), or *Carlettini v. Workers' Compensation Appeal Board (City of Philadelphia)*, 714 A.2d 1113 (Pa. Cmwlth.1998), in holding that interest accrued in this case starting on October 28, 1997. (*See* majority op. at 66–68.) In-

---

**10.** Although Claimant does not take issue with the WCJ's statement of Dr. McCarter's opinion, we note that the second paragraph of Finding of Fact No. 8 mischaracterizes Dr. McCarter's testimony. On at least five occasions during her deposition, the doctor stated

that she did not believe that Claimant sustained a conductive hearing loss. She further explained that any differences between air test results and bone conduction test results fall within the realm of error of the test.

stead, I would base that holding solely on the plain language of section 406.1 of the Pennsylvania Workers' Compensation Act (Act).[1]

Section 406.1 of the Act states: "The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability. Interest shall accrue on all *due* and unpaid compensation...." 77 P.S. § 717.1 (emphasis added). The reason for imposing interest under section 406.1 of the Act is to compensate the claimant for the loss of use of the funds he or she would have received *if there had been no contest. Lastoka v. Workmen's Compensation Appeal Board,* 51 Pa.Cmwlth. 310, 413 A.2d 481 (1980); *Mathies Coal Co. v. Workmen's Compensation Appeal Board,* 40 Pa.Cmwlth. 120, 399 A.2d 790 (1979).

Here, William Way (Claimant) filed a claim petition on August 4, 1995, alleging that he sustained an occupational hearing loss as of July 26, 1995. If USX Corporation (Employer) had not contested the claim, Claimant would have received his first installment of compensation no later than twenty-one days after August 4, 1995, when Employer received notice of the claim.[2] However, the workers' compensation judge (WCJ) determined that no compensation was *due* Claimant until October 28, 1997. Because compensation was not *due* until October 28, 1997, interest did not begin to accrue until that date.[3]

The majority reaches the same result based on this court's holdings in *Socha* and *Carlettini.* (Majority op. at 68.) For the reasons that follow, I believe reliance on those cases is ill-advised.

In *Socha,* the claimant was aware in 1990 that he was suffering from a hearing loss. However, it was not until September 6, 1995 that a physician informed the claimant that his hearing loss was work-related, prompting the claimant to file a claim petition on September 25, 1995. The issue before this court was whether the claim was time-barred under section 311 of the Act, 77 P.S. § 631, because the claimant failed to give the employer notice of the injury within 120 days. This court stated that the time for giving notice did not begin to run until September 6, 1995, the day that the claimant learned from a physician that his hearing loss was related to his employment. Because the claimant gave the employer notice of his work injury by filing a claim petition on September 25, 1995, well within 120 days of September 6, 1995, this court held that the claim was *not* time-barred.

In contrast to *Socha,* Claimant here believed that he had a compensable hearing loss on July 26, 1995 and filed a claim petition on August 4, 1995, long before he ever consulted a physician. Thus, unlike *Socha,* timely notice is not an issue here.[4] Rather, the issue is whether the Workers' Compensation Appeal Board (WCAB) erred in concluding that interest began to

1. Act of June 2, 1915, P.L. 736, added by section 3 of the Act of February 8, 1972, P.L. 25, *as amended,* 77 P.S. § 717.1.

2. The WCJ found that Employer received notice of the claim on August 4, 1995, when Claimant filed the claim petition. (*See* WCJ's Conclusions of Law, No. 2.)

3. If Claimant had proven that his loss occurred as of July 26, 1995, interest would have begun to accrue 21 days after Employer received the August 4, 1995 petition.

4. I realize that Claimant did not prove his allegation that he suffered an occupational hearing loss as of July 26, 1995. However, that does not mean that Claimant's notice to

Employer was deficient. *See Duquesne Light Co. v. Workmen's Compensation Appeal Board (Laskosky),* 69 Pa.Cmwlth. 331, 450 A.2d 1100 (1982) (stating that a claimant can give notice to an employer before a physician establishes that the claimant's injury is compensable); *see also Findlay Refractories v. Workmen's Compensation Appeal Board,* 52 Pa.Cmwlth. 454, 415 A.2d 1270 (1980). Indeed, had Dr. McCarter credibly testified that she reviewed all of Claimant's audiograms on October 28, 1997 and believed that Claimant sustained a hearing loss of greater than 10 percent as of July 26, 1995, Claimant would have established a compensable injury as of July 26, 1995.

accrue on March 7, 1995. As indicated above, interest only accrues on *due* and unpaid compensation, and no compensation was *due* Claimant until October 28, 1997, the date on which Claimant proved that his hearing loss exceeded ten percent and was work-related. Therefore, contrary to the WCAB's determination, interest did not begin to accrue prior to October 28, 1997. Because the facts and issues in *Socha* are very different from those under consideration here, *Socha* provides no guidance in the resolution of this case.

As for *Carlettini*, I agree that the holding in that case supports the result reached here; however, because I believe that the analysis set forth in *Carlettini* is flawed, I would not rely on that case. In *Carlettini*, the claimant filed a claim petition on October 17, 1994, seeking compensation for a disfigurement caused by an accident that occurred at work on April 4, 1994. The WCJ viewed the claimant's scars at a hearing on January 13, 1995 and at a hearing on February 28, 1996. At the second hearing, which the employer attended, the WCJ stated on the record that, because there had been no improvement in

the scars since the first hearing, the claimant established a permanent and, thus, compensable injury on the date of the second hearing. Therefore, the WCJ awarded statutory interest as of February 28, 1996. The claimant appealed to the WCAB, seeking statutory interest as of April 25, 1994, twenty-one days after the date of the accident.[5] The WCAB affirmed the WCJ.

This court then affirmed the WCAB, holding that compensation was due, and interest began to accrue, on February 28, 1996, the date of the second hearing. However, in so holding, this court, relied on *Hutz v. Workmen's Compensation Appeal Board (Stafanak & Son)*, 116 Pa. Cmwlth. 162, 540 A.2d 1380 (1988), *aff'd*, 525 Pa. 361, 580 A.2d 757 (1990), for the proposition that an employer must receive notice of a *compensable* injury, and stated that the employer did not receive *notice* of a compensable injury until February 28, 1996, the date of the second hearing.[6] *See Carlettini*, 714 A.2d at 1116. This statement is incorrect. The employer in *Carlettini* received notice of a compensable injury when the claimant served Employer

---

5. Although the accident occurred on April 4, 1994, the employer did not know on that date that the claimant sustained a permanent disfigurement. The employer knew only that the claimant had several cuts and abrasions on his face. *See Carlettini.*

6. This court's reliance on *Hutz* was improper because *Hutz* involved unique facts that are not present in *Carlettini* and are not present here.

In *Hutz*, the claimant sustained a crushing injury to his right hand and four fingers in 1973 while in the course of his employment. Because the claimant's disability was obvious to the employer, the employer paid the claimant workers' compensation benefits pursuant to a notice of compensation payable (NCP). *Cf. Van Patton v. Workmen's Compensation Appeal Board (Scott Paper Co.)*, 86 Pa.Cmwlth. 538, 485 A.2d 541 (1984) (stating that an employer's actual knowledge of an injury obviates the need for a claimant to give notice). On May 2, 1974, the employer received a medical report stating that the claimant had a 50% loss of function in his fingers. Years later, on October 15, 1982, the claimant filed

a modification petition, alleging that he lost the use of his fingers for all practical intents and purposes. A WCJ granted the petition and awarded interest as of May 2, 1974, finding that the employer knew about the specific loss claim from the medical report. The WCAB, however, concluded that the employer did not receive notice of a specific loss claim until the claimant filed his modification petition. This court affirmed the WCAB, explaining that a 50% loss of function is not an obvious loss of use for all practical intents and purposes.

In other words, *Hutz* stands for the proposition that an employer who issues an NCP and pays disability benefits to a claimant as a result of an obvious work injury, but who has not been presented with a petition alleging a separate specific loss, is entitled to notice of a specific loss that would be compensable if proven. However, the employer in *Carlettini*, and Employer here, never issued an NCP or paid disability benefits for an obvious injury. Moreover, neither of the employers received any notice of a specific loss prior to the filing of a petition. Therefore, the holding in *Hutz* has no application in *Carlettini* or here.

with the October 17, 1994 claim petition. The fact that the claimant did not *prove* that the injury was permanent, so that compensation was due, until February 28, 1996 is irrelevant to the question of notice.

Examining the analysis in *Carlettini* further, if the employer in *Carlettini* did not receive notice of a compensable injury until February 28, 1996, then, under section 406.1 of the Act, the first installment of compensation would have been due twenty-one days after February 28, 1996, and interest would have begun to accrue at that time. This, of course, was not the holding in *Carlettini;* as indicated above, this court held that interest began to accrue on February 28, 1996, not twenty-one days later. Moreover, the implication in

*Carlettini* is that an employer can receive notice of a compensable injury only after the claimant *proves* the injury to be compensable. I do not believe that this could have been the intent of the legislature.[7]

Again, although I concur with the result reached by the majority, I would not rely on *Socha* or *Carlettini.* Instead, I would rely on the plain language of section 406.1 of the Act.

---

**7.** Section 312 of the Act, 77 P.S. § 632, states that notice shall inform the employer that the employee received an injury, described in ordinary language, in the course of his employment on or about a specified time, at or near a specified place.