**Thomas BUCCI, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ROCKWELL INTERNATIONAL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 30, 2000.

Decided Aug. 23, 2000.

James C. Warmbrodt, Pittsburgh, for petitioner.

Albert S. Lee, Pittsburgh, for respondent.

Before COLINS, J., McGINLEY, J. and JIULIANTE, Senior Judge.

COLINS, Judge.

Thomas Bucci (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge (WCJ) dismissing Claimant's claim petition. We affirm.

From 1971 through 1993, Claimant was employed by Rockwell International (Employer) as a machine operator. Claimant acknowledged that his hearing "wasn't the best" when he started working for Employer in 1971, but felt that his hearing had substantially "deteriorated" during the last ten years of his employment, when he worked in an area approximately 40 to 50 feet from a heat treating furnace that made a loud "metal against metal" sound. In 1992, Claimant was directed by his physician to use a hearing aid for his right ear, and he stated that he used earplugs or some other form of hearing protection 80 to 90 percent of his work hours.

On November 18, 1995, Claimant filed a claim petition alleging work-related hear-

ing loss, which petition Employer timely answered. On January 29, 1998, the WCJ denied Claimant's petition, after conducting several hearings, and after evaluating the medical reports and deposition testimony of Michael C. Bell, M.D. on Claimant's behalf, and the medical reports and deposition testimony of Sidney N. Busis, M.D. on Employer's behalf. Claimant appealed, and the Board, by opinion and order dated January 25, 2000, affirmed the WCJ's conclusion that Claimant had failed to establish that he sustained a work-related hearing loss during the course and scope of his employment. This appeal followed.[1]

On appeal, Claimant argues that he met his burden of proving that he sustained a work-related hearing loss by submitting the testimony of Dr. Bell that Claimant's 60–percent binaural hearing impairment was caused by exposure to hazardous noise while working for Employer, and by personally testifying that his hearing had worsened during the course of his employment. Claimant further contends that the only evidence that Employer submitted in defending the claim were the results of a 1988 dosimetry study presented during the testimony of Dr. Busis, to which Claimant avers he objected.[2]

The requirements for establishing a work-related, compensable hearing loss were addressed by this Court in *USX Corporation v. Workers' Compensation Appeal Board (Way)*, 754 A.2d 64, 67 (Pa. Cmwlth.2000), as follows:

In order to establish a right to compensation, a claimant has the burden of proving that he has sustained a permanent loss of hearing that is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise. Section 306(c)(8)(i) of the Act, 77 P.S. § 513(8)(i).

Section 306(c)(8) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 513(8), was amended by Act I, Act of February 23, 1995, P.L. 1, 77 P.S. § 513(8), and contains the hearing loss amendments. Section 306(c)(8)(vi) of Act 1 states:

> (vi) An employer shall be liable only for the hearing impairment caused by such employer. If previous occupational hearing impairment or hearing impairment from nonoccupational causes is established at or prior to the time of employment, the employer shall not be liable for the hearing impairment so established whether or not compensation has previously been paid or awarded.

77 P.S. § 513(8)(vi).

In the present matter, the WCJ found the medical opinion of Dr. Busis that Claimant's degree of hearing loss was far beyond the level caused by occupational noise exposure more credible than that of Dr. Bell who attributed Claimant's hearing loss to his exposure to occupational noise. Therefore, the WCJ found that Claimant did not sustain a work-related hearing loss

1. The scope of review on appeal from the Board is whether there is an error of law, whether the essential findings are supported by substantial evidence, or whether constitutional rights have been violated. *General Electric Co. v. Workers' Compensation Appeal Board (Bower),* 734 A.2d 492 (Pa.Cmwlth. 1999), *petition for allowance of appeal denied,* 561 Pa. 679, 749 A.2d 473 (2000).

2. Although Claimant alleges that he objected to Employer's submission of the 1988 dosimetry study results presented during Dr. Busis' December 12, 1996 deposition testimony, the WCJ's Finding of Fact No. 8. expressly states that "Claimant waived objection to this dosimetry study by failing to preserve any objec-

tions pursuant to the Rules of Practice and Procedure." Specifically, Referees' Rules Section 133.66(b) requires that in making a proper objection at a deposition, the objection must be designated in a separate writing prior to the close of the record, stating the specific nature of the objection and the page of the deposition where it appears, and only such an objection will be preserved for ruling. Any objection not so preserved is waived. Although the record indicates that Claimant's attorney made a verbal objection during the deposition, under the foregoing Rule, this alone would not suffice to preserve said objection.

during the course of his employment with Rockwell International. In this regard the following deposition testimony of Dr. Busis is relevant:

[Direct Testimony of Dr. Busis:]

Q. Doctor, you indicated that Mr. Bucci indicated that the noise while working at Rockwell was all around him. Could you indicate ... whether that is significant in any way?

A. It is particularly significant ... because this patient has a markedly asymmetric hearing loss. Much more hearing loss on the left. And he certainly wasn't in the situation of work where his left ear was facing noise and his right ear wasn't, he made the point the noise was all around him, so that certainly cannot explain the degree of asymmetry that this man has in his hearing.

. . . .

Q. Did you have Mr. Bucci undergo an audiologic examination?

A. Yes.

Q. And could you tell us what that examination revealed?

A. He had a markedly asymmetric sensorineural hearing loss, with much poorer hearing on the left than on the right....

There are also dosimeter reading reports, and those are devices used to measure the level of noise exposure for an individual and to determine how much noise a person was exposed to in a workday. And these reports are dated November 18, 1988.... Well, most readings are 90 dB or less .... the ones that are above only last for several minutes, so based on this report, Mr. Bucci would not have been exposed to enough noise at Rockwell to experience noise-induced hearing loss.

Q. Now, Doctor, ... when you look at the history you took from Mr. Bucci, your physical exam, when you look at audiologic test results and you reference the documents you've referenced, did you form an opinion as to what did cause Mr. Bucci's hearing loss?

A. First, let me say his audiometric curves are not characteristic of occupational noise-induced hearing loss because of the marked asymmetry and also the degree of hearing loss.

Q. When you say, 'the degree of hearing loss,' could you explain ... what you mean?

A. Yes. Occupational noise-induced hearing loss in high frequencies usually does not reach a level of more than 75 dB. If we look at Mr. Bucci's audiometric test results, ... on the left ... at the higher frequencies, ... he's just greater than the audiometer can record, so that's out of the question as to whether or not that's noise induced. It just isn't. And on the right, ... I believe those, too, are beyond the level that we would find due to occupational noise exposure.

Q. Now, Doctor, even had you not reviewed the dosimeter reading reports of November 18, 1988, could you have determined that Mr. Bucci's loss was not an occupational loss even without that report?

A. Yes. In my opinion, even without that report, it would be my opinion that this is not occupational noise induced.

Q. ...In Mr. Bucci's case, did you take a look at the role of aging at all?

A. Yes. Mr. Bucci's aged 63. I believe part of his hearing loss is due to aging.

Q. Typically you've worked out a percentage of loss. Did you do so in this case?

A. No, I did not, because when we find this degree of asymmetry, I don't think it's fair to apply the formula we use and the standards.

. . . .

Q. And this asymmetry, Doctor, do you usually see that in cases where there's an occupational-induced hearing loss?

A. Occupational noise-induced hearing loss usually is symmetrical.

(Deposition N.T., 12–12–96, pp. 10, 19–22).

In reviewing Dr. Busis' testimony, we note that had he based his medical opinion that Claimant's hearing loss was not work related solely upon the effects of aging, or "presbycusis," a form of hearing loss due to wear and tear or deterioration within the ear, it would be questionable in light of our Supreme Court's recent decision in *LTV Steel Co. v. Workers' Compensation Appeal Board (Mozena)*, 562 Pa. 205, 754 A.2d 666 (2000).

In *Mozena*, the Supreme Court stated that:

> Courts must have reliable means for distinguishing the effects of presbycusis from the effects of long-term exposure to occupational noise. Neither LTV nor USX has shown how the Act can both accomplish its humanitarian objective and permit a reduction in liability based on indiscriminate information.... There is no reliable scientific (controlled) means of quantifying how aging impairs the hearing of a given individual. Whereas, the effect of many other non-occupational factors is quantifiable. Courts have reduced an employer's responsibility for benefits where it established that a nonwork-related cause was the substantial contributing factor of hearing impairment.... Where the nonoccupational causes of a specific individual's hearing impairment is quantifiable using the AMA Guides, either side may present evidence of the percentage of loss.

*Id.*, 754 A.2d at 674, 675–76, 676.

In the matter before us, Dr. Busis definitively testified that Claimant exhibited marked asymmetry in his hearing loss problem, and that such asymmetry is rarely found in occupational-caused hearing impairments. The WCJ found Dr. Busis' testimony more credible than that of Claimant's expert witness, and as this Court has consistently reaffirmed, "the

WCJ is the sole arbiter of questions of credibility and may accept or reject the testimony of any witness in whole or in part." *General Electric Co. v. Workers' Compensation Appeal Board (Rizzo)*, 737 A.2d 852, 855 (Pa.Cmwlth.1999).

Accordingly, on the basis of the foregoing, the order of the Board is affirmed.

## *O R D E R*

AND NOW, this 23rd day of August 2000, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.