**Michael MAGUIRE, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CHAMBERLAIN MANUFACTURING COMPANY, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 4, 2002.

Decided April 14, 2003.

Gerard W. Langan, Jr., Pittston, for petitioner.

Katherine M. Lenahan, Scranton, for respondent.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Michael Maguire (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied him benefits for a hearing loss that Claimant believes was caused by his exposure to occupational noise at Chamberlain Manufacturing Company (Employer). In denying Claimant benefits, the Board affirmed the Workers' Compensation Judge's (WCJ) decision that Claimant's hearing loss was not work-related. We affirm the Board.

The facts relevant to Claimant's employment and the existence of his hearing loss are not in dispute. Claimant worked for Employer for a period of thirty-four

years,[1] principally as a "quality control inspector." Claimant inspected long-range artillery shells, working in the forge shop and the production shop. Prior to his retirement on October 30, 1998, Claimant's hearing had been tested several times by Employer. In June, 1995, audiometric testing showed a hearing loss of 5.6%, and subsequent tests showed the following results: in April, 1996, a loss of 2.5%; in May, 1997, a loss of 5.5%; in July, 1997, a loss of 2.5%; in April, 1998, a loss of 9.6%; and in July, 1998, a loss of 4.0%.

On November 23, 1998, Claimant filed a claim petition alleging that he suffered a bilateral hearing loss on October 30, 1998, the date of his retirement, as a result of his employment with Employer. Employer filed an answer denying Claimant's allegations and asserting, as an affirmative defense, that Claimant had not been exposed to hazardous occupational noise at Employer's facility. After hearings and consideration of all the evidence, the WCJ denied Claimant's petition. Claimant appealed, and the Board affirmed the WCJ's conclusion that Claimant had failed to establish that his hearing loss was a work-related injury. Claimant then petitioned for our review.[2]

On appeal, Claimant asserts that the WCJ erroneously placed the burden on Claimant to demonstrate a hearing loss of 10%, or greater, on or before October 30, 1998, the date of his retirement. He also argues that the WCJ's findings of fact were not supported by substantial evidence, specifically the finding on the percentage of hearing loss attributed to Claimant's aging. Finally, he contends that the testimony of Joseph Baumgardner, the safety engineer called by Employer to testify about noise studies conducted at Employer's facility, was not competent.

Section 306(8)(i) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(8)(i),[3] establishes a schedule of benefits for permanent loss of hearing that is work-related. Section 306(8)(vi) of the Act provides in relevant part:

> (vi) An employer shall be liable only for the hearing impairment caused by such employer.

77 P.S. § 513(8)(vi). Claimant concedes that it was his burden to prove that his hearing loss was caused by long-term exposure to hazardous occupational noise. *USX Corp. v. Workers' Compensation Appeal Board (Way)*, 754 A.2d 64, 67 (Pa.

1. Previous employment included serving in the U.S. Air Force as a radar controller, which did not expose him to noise. In the 1950s, Claimant worked for Eastern Airlines as a customer service representative, which required occasional work outside with stairs. The only hobby that exposed him to noise was target shooting, but he had not done this for five or six years prior to filing his claim petition.

2. This Court's review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. *Dworek v. Workmen's Compensation Appeal Board (Ragnar Benson, Inc. & National Union Fire Insurance Co.)*, 166 Pa.Cmwlth.512, 646 A.2d 713

(1994). This standard is mandated by the Administrative Agency Law, 2 Pa.C.S. § 704. Further, this standard is not affected by our Supreme Court's recent holding in *Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002).

3. It states in relevant part:

> For permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the percentage of impairment shall be calculated by using the binaural formula provided in the Impairment Guides.

Section 306(8)(i) of the Act, 77 P.S. § 513(8)(i).

Cmwlth.2000). However, he disagrees with the WCJ's application of Section 306(8)(iii) of the Act, which states, in part, as follows:

> Notwithstanding the provisions of sub-clauses (i) and (ii) of this clause, if there is a level of binaural hearing impairment as calculated under the Impairment Guides which is equal to or less than ten percentum, no benefits shall be payable.

77 P.S. § 513(8)(iii). Claimant asserts that it was error for the WCJ to require evidence of a 10% hearing loss on or before October 30, 1998, the date of Claimant's retirement. As long as Claimant shows that his hearing loss was caused by exposure to occupational noise, it does not matter if the actual loss is manifested before or after retirement.

At the hearing before the WCJ, Claimant presented the deposition testimony of Anthony C. Brutico, M.D., who is board-certified in otolaryngology. Dr. Brutico testified that an audiogram performed on Claimant on April 22, 1999 showed a 15.625% hearing loss under the American Medical Association's Guides to the Evaluation of Permanent Impairment, 4th Edition (June 1993) (Impairment Guides). He opined that Claimant's hearing loss was causally related to exposure to noise in his work for Employer. However, Dr. Brutico did not review the audiograms Employer performed on Claimant prior to his retirement. Dr. Brutico acknowledged that he could not state, with a reasonable degree of medical certainty, that Claimant's hearing loss exceeded 10% as of October 30, 1998.[4]

In response, Employer presented the deposition testimony of David Barras, M.D., who is also board-certified in otolar-yngology. He testified that an audiogram performed on Claimant on October 1, 1999, showed a binaural hearing loss of 18.7% under the Impairment Guides. He reviewed the results of Employer's audiological tests done on Claimant prior to his retirement. Dr. Barras opined that Claimant's hearing loss resulted from aging, excessive exposure to loud noise, both recreational and occupational, and possibly other unknown factors, with 6.9% of the loss due to aging, and the remaining 11.8% attributable to loud noise and other unknown factors.

When asked to reconcile all the results, Dr. Barras opined that he did not believe that Claimant's hearing loss exceeded 10% prior to his retirement. He explained that where a series of hearing tests produce varied measurements, the hearing loss is somewhere between the highest and lowest results. It was his opinion that Claimant did not have an actual 9.6% hearing loss in April, 1998 because his subsequent test in July, 1998 showed a 4.0% hearing loss. Dr. Barras did not believe it was possible for Claimant's hearing to have improved during that period of time. Accordingly, he believed that Claimant's hearing loss in July, 1998 was somewhere between 4.0% and 9.5%. By factoring in the results of 5.0% and 2.5% in the prior years, he concluded that Claimant suffered a hearing loss of 5% or 6% over the two-year period preceding his retirement.

When asked about the increase in Claimant's hearing loss to 15.625% on April 22, 1999, Dr. Barras could not attribute the increased loss to his work activities:

> Because there is no evidence and there is nothing written and I have not seen

---

4. On cross examination, Dr. Brutico was informed of Claimant's pre-retirement audiograms. At that point, Dr. Brutico testified that he could not state within a reasonable degree of medical certainty that Claimant's hearing loss exceeded 10% on the date of his last exposure to noise in the workplace. Reproduced Record 66a (R.R. ——).

anything to show that once one is no longer exposed to loud noise that the hearing loss will progress; in other words, once you stop the exposure to loud noise, any *hearing loss that you have had due to loud noise will not increase over time, it won't get worse.* ... If anything, you may have a temporary shift in the hearing. If the hearing was tested after the immediate loud noise period, that will get slightly better. It certainly is not going to get worse over time.

R.R. 211a–212a (emphasis added). In short, Employer's medical expert opined that a hearing loss caused by exposure to hazardous occupational noise would not continue to deteriorate after the exposure ceased. The cause of the deterioration would be something else, such as aging or exposure to other noise.

The WCJ found the testimony of Dr. Barras to be more persuasive than that of Dr. Brutico. Dr. Barras examined and evaluated Claimant's pre-retirement audiometric tests and explained the variance in the test results. The WCJ found Dr. Barras' conclusion more credible and was persuaded by Dr. Barras that once exposure to noise stops, a hearing loss caused by noise will not continue to deteriorate but actually "get slightly better."

■ The Claimant's theory, that a hearing loss caused by exposure to occupational noise can manifest itself after the exposure terminates, was not supported by substantial evidence. Further, "the unanimous opinion of medical experts is that typical occupational hearing loss is a repetitive trauma injury which manifests itself in a fixed state at the last point of exposure to the harmful noise, and which does not get worse thereafter." 1 DAVID R. TORREY, ET AL., PENNSYLVANIA WORKERS'

COMPENSATION: LAW AND PRACTICE § 5:129 (2001). Claimant has not produced evidence that would support a conclusion that his work-related hearing loss continued to develop even after he left his employment; this was his obligation. *Rockwell International v. Workers' Compensation Appeal Board (Sutton)*, 736 A.2d 742, 744 (Pa. Cmwlth.1999) (stating that a claimant must prove all elements of a claim). In the absence of evidence to support Claimant's theory, we need not decide whether the Act requires, in every case, that a claimant show a hearing loss of 10% on or before the claimant's last day of work.

■ Further, the WCJ's findings on Claimant's hearing loss attributable to aging is supported by substantial evidence in the testimony of Dr. Barras. Dr. Barras testified that at no time prior to his retirement was Claimant's total hearing loss greater than 10%, including that attributable to aging. His opinion on the degree of Claimant's hearing loss was based upon a review of Claimant's audiograms and of the various factors contributing to hearing loss. Dr. Barras' testimony was found credible by the WCJ.

In *Bucci v. Workers' Compensation Appeal Board (Rockwell International)*, 758 A.2d 279 (Pa.Cmwlth.2000), we affirmed a finding of the WCJ on the degree of hearing impairment due to aging. In that case, the employer's medical expert testified that claimant's hearing loss was asymmetric and that such asymmetry was rarely found in occupational-caused hearing impairments; accordingly, he opined that claimant's hearing loss was not work-related. Upon review, this Court noted that had the WCJ based his opinion solely upon the age of the claimant, the decision would have been questionable.[5] However, the

---

**5.** *See, LTV Steel Co. v. Workers' Compensation*    *Appeal Board (Mozena),* 562 Pa. 205, 754 A.2d

WCJ had specifically found employer's expert more credible than the claimant's and, as this Court has consistently reaffirmed, "the WCJ is the sole arbiter of questions of credibility and may accept or reject the testimony of any witness in whole or in part." *Bucci,* 758 A.2d at 282 (internal citations and quotations omitted).[6] We follow that principle here and will not set aside the WCJ's reliance upon the testimony of Dr. Barras.

For these reasons, we affirm the decision of the Board.

### ORDER

AND NOW, this 14th day of April, 2003, the order of the Workers' Compensation Appeal Board, dated May 29, 2002, in the above-captioned matter is hereby affirmed.

---

6. Claimant's final issue was that the testimony of Joseph Baumgardner was not competent testimony. Because Claimant's medical expert did not establish a 10% hearing loss as of October 30, 1998, we need not consider Employer's affirmative defense that the noise to which Claimant was exposed at the workplace was not hazardous.