**WHEELING–PITTSBURGH STEEL CORPORATION, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SESCO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted May 9, 2003.

Decided July 16, 2003.

As Amended July 31, 2003.

James D. Strader, Pittsburgh, for petitioner.

Daniel K. Bricmont, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, Judge, COHN, Judge, JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Wheeling–Pittsburgh Steel Corporation (Employer) petitions for review of the January 13, 2003 order of the Workers' Compensation Appeal Board (Board) affirming the January 4, 2002 order of the Workers' Compensation Judge (WCJ) that granted the claim petition of John Sesco (Claimant) for binaural hearing loss due to long and continuous exposure to hazardous occupational noise during the course of his employment. We affirm.

Claimant began working for Employer on April 25, 1971. As a messenger, Claimant would travel throughout the steel mill. Prior to his employment, Claimant worked for a short period of time for Twin Rivers Towing and Consol Coal Company, neither of which exposed him to loud noises. Days before starting his job with Employer, Claimant was given a hearing examination.

Claimant later transferred to the cold draw department, where he was exposed to noise from pipes banging and running motors, sirens and cranes. He continued in that job until the mill closed. After being off work for a short period, Claimant began working for Employer in its Yorkville, Ohio plant. At the time of his transfer, Claimant retained his seniority and was not considered a new employee. He checked coils in Yorkville for approximately ten years, where he was exposed to loud

noises from machinery, whistles, and sirens.

Subsequently, Claimant transferred to Employer's Allenport plant, where he currently works in the production department. Upon his transfer, Claimant once again retained his seniority. As a scheduler, Claimant is exposed to noise from motors, tractors, horns, trains and trucks while in the mill. Claimant estimated that his time is divided equally between the mill and the office, and he stated that he does not wear hearing protection when he is in the mill.

Claimant was not in the armed forces and, although he has hunted in the past, he has not done so in the last ten years. He has used power tools on occasion, but he does not have any recreational hobbies that involve loud noises. Claimant does not have a family history of hearing loss nor has he had any illness that would affect his hearing.

Socially, Claimant cannot hear the television or the radio without the volume turned to its highest setting. He has difficulty understanding conversations if background noise is present. In October 2000, Claimant first learned from Dr. Michael Bell that his hearing loss was related to his employment.

Dr. Bell, a board-certified otolaryngologist, testified regarding Claimant's personal and work history. A pure tone test performed by a certified audiologist under Dr. Bell's supervision revealed that Claimant had bilateral symmetrical gradual sloping, mild to moderate to severe sensorineural hearing loss with a very small notch still present at the 4000 Hz level. Claimant's speech perception was consistent with the pure tone level average, and the discrimination scores at the mean comfortable level were fair in the right ear and poor in the left. Thus, in Dr. Bell's opinion, Claimant suffered a 35.6% hearing loss in the right ear, a 35.6% hearing loss in the left ear, for a handicap of 35.6% binaural hearing loss.

The doctor further stated that in his opinion, there were no other medical or social conditions that contributed to Claimant's hearing loss. Rather, his hearing loss was caused by his exposure to loud noises during his employment and is a permanent condition.

Dr. Bell reviewed the 1971 pre-employment audiogram performed on Claimant by Employer. He stated that the audiogram did not conform to the Occupational Health and Safety Administration's (OSHA) standards in that Claimant was exposed to noise (which was an hour in duration) 20 minutes prior to the audiogram and that there is no indication that the audiogram was performed by a certified audiologist.[1] Additionally, Dr. Bell noted that there was no speech reception threshold listed, which would aid in verifying the accuracy of the pure tone findings.

In opposition to Claimant's petition, Employer presented the testimony of Dr. Douglas Chen, who is also a board-certified otolaryngologist. The result of the audiogram performed under Dr. Chen's direction was strikingly similar to that of Dr. Bell where the audiogram revealed that Claimant sustained a 35.9% bilateral symmetrical sensorineural hearing loss.

Considering the 1971 pre-employment audiogram, Dr. Chen concluded that part of Claimant's hearing loss was not the result of his employment. Noting that the 1971 audiogram showed that Claimant had a 17.8% hearing loss prior to his employment, Dr. Chen determined that only

---

1. *See* 29 C.F.R. § 1910.95(g)(5)(iii)(testing to establish a baseline audiogram shall be preceded by at least 14 hours without exposure to workplace noise).

18.1% of Claimant's overall hearing loss was due to his employment. Additionally, Dr. Chen diagramed Claimant's hearing loss over the term of his employment. The diagram showed a slow progression of hearing loss, with a 32.5% loss evident in 1998, just prior to Claimant's transfer to Employer's Allenport facility.

Based on the credible testimony of Claimant and Dr. Bell, the WCJ found that Claimant sustained his burden of proving a work-related injury in the form of binaural hearing loss of 35.6% as a result of long and continuous exposure to hazardous occupational noise during the course of his employment. Accordingly, the WCJ awarded Claimant disability benefits for a period of 92.56 weeks in the amount of $571.29 per week based on an average weekly wage of $856.94.

Employer appealed to the Board, which affirmed the WCJ's decision and order. Employer's petition for review followed. On review, we are limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Morris Painting, Inc. v. Workers' Compensation Appeal Board (Piotrowski)*, 814 A.2d 879 (Pa.Cmwlth.2003).

Sections 306(c)(8)(i) and (iv) of the Workers' Compensation Act[2] state, in relevant part

(i) For permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the percentage of impairment shall be calculated by using the binaural formula provided in the Impairment Guides. The number of weeks for which compensation shall be payable shall be determined by multiplying the percentage of binaural hearing impairment as calculated under the Impairment Guides by two hundred sixty weeks.

. . . .

(iv) The percentage of hearing impairment for which compensation may be payable shall be established solely by audiogram. The audiometric testing must conform to OSHA Occupational Noise Exposure Standards, 29 CFR 1910.95 (relating to occupational noise exposure) and Appendices C, D and E to Part 1910.95 (July 1, 1994).

Additionally, the term "long-term exposure" as used in the Act means exposure to "noise exceeding the permissible daily exposure for at least three days each week for forty weeks of one year." Section 105.6 of the Act,[3] 77 P.S. § 25.6. Hazardous occupational noise is defined as "noise levels exceeding permissible noise exposures as defined in Table G–16 of OSHA Occupational Noise Exposure Standards, 29 CFR 1910.95 (relating to occupational noise exposure) (July 1, 1994)." Section 105.4 of the Act, 77 P.S. § 25.4.[4]

■ The burden of proof is on the claimant to establish that he suffers from a permanent hearing loss of ten percent or greater that is medically established to be work-related and caused by the long-term exposure to hazardous occupational noise. *Flatley v. Workers' Compensation Appeal Board (Mallinckrodt Chem., Calsicat Div.)*, 803 A.2d 862 (Pa.Cmwlth.2002), *appeal denied*, —— Pa. ——, 820 A.2d 705 (2003). "Whether the employe has been

---

**2.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 513(8)(i), (iv).

**3.** Added by Section 1 of the Act of February 23, 1995, P.L. 1.

**4.** Added by Section 1 of the Act of February 23, 1955, P.L. 1.

exposed to hazardous occupational noise or has long-term exposure to such noise shall be affirmative defenses to a claim petition for occupational hearing loss and not a part of the claimant's burden of proof in a claim." Section 306(c)(8)(x) of the Act, 77 P.S. § 513(8)(x).

## I

In its first argument, Employer maintains that the WCJ erred in rejecting the 1971 pre-employment audiogram which established that Claimant had a 17.8% hearing loss prior to his employment. In Finding of Fact 7, the WCJ rejected the 1971 audiogram on the ground that Claimant was exposed to noise in the 14 hours prior to testing, which was contrary to OSHA regulations. (F.F.7) Pursuant to Section 306(c)(8)(vi) of the Act, 77 P.S. § 513(8)(vi), an employer is only liable for the hearing impairment caused by such employer. "If previous occupational hearing impairment or hearing impairment from nonoccupational causes is established at or prior to the time of employment, the employer shall not be liable for the hearing impairment so established whether or not compensation has previously been paid or awarded." *Id.*

Admittedly, the OSHA regulations pertaining to occupational noise exposure were not in effect at the time of Claimant's 1971 pre-employment audiogram.[5] Nevertheless, Section 306(c)(8)(iv) provides that "[t]he audiometric testing *must* conform to OSHA Occupational Noise Exposure Standards ..." 77 P.S. § 513(8)(iv)(emphasis added). Thus, by the clear language of the Act, the WCJ could consider the 1971 audiogram only if it met OSHA standards.[6]

To that end, the WCJ accepted as credible Dr. Bell's testimony that the 1971 audiogram did not meet OSHA standards because Claimant was exposed to noise 14 hours before the test. Additionally, Claimant credibly testified that he was exposed to noise within twenty minutes of taking the test, and that such exposure lasted for approximately one hour.

 The WCJ, as ultimate factfinder, "is the sole arbiter of the credibility and weight of the evidence." *Rissi v. Workers' Compensation Appeal Board (Tony DePaul & Son)*, 808 A.2d 274, 278 (Pa. Cmwlth.2002). The WCJ is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *McNulty v. Workers' Compensation Appeal Board (McNulty Tool & Die)*, 804 A.2d 1260, 1263, n. 2. (Pa.Cmwlth.2002). Thus, the WCJ was free to accept Dr. Bell's testimony that the 1971 audiogram did not meet OSHA standards.[7]

---

5. The federal regulations pertaining to occupational noise exposure became effective August 27, 1971. *See* 29 C.F.R. § 1910.98.

6. Our research has failed to uncover any cases discussing pre-OSHA regulation audiograms and Section 306(c)(8)(iv) of the Act. Although not authoritative, the Pennsylvania Bar Institute (PBI), in its publication entitled "Hearing Loss Benefits Under the Workers' Compensation Act," states that

 [i]f a current OSHA audiogram demonstrates a certain percentage loss under Act 1 (Act of February 23, 1995, P.L. 1], then unless the current employer is able to establish through a prior OSHA audiogram that

the employee did not suffer that degree of loss while employed by the current employer, the current employer will be liable for the entire loss demonstrated by the OSHA audiogram.

P.B.I. No.1995–984, pp. 12–13. Thus, our interpretation of Section 306(c)(8)(iv) is consistent with at least that of the PBI.

7. Contrary to Employer's assertions, Dr. Chen did not state that the 1971 audiogram met OSHA standards. Employer's cites Dr. Chen's testimony on cross-examination; however that testimony is as follows:

 Q. [Claimant's counsel] You mentioned in your testimony that your audiometric test-

██ Because the Act requires that the WCJ consider only those audiograms that meet OSHA standards when determining whether Claimant sustained a hearing loss due to exposure to hazardous occupational noise, we cannot conclude that the WCJ erred in disregarding the results of the 1971 audiogram conducted by Employer.

## II

In its second argument, Employer argues that the WCJ erred in concluding that Claimant is entitled to workers' compensation benefits in Pennsylvania when a portion of Claimant's hearing loss occurred while he was working in Ohio. Employer cites Section 305.2 of the Act:

> (a) If an employe, while working outside the territorial limits of this State, suffers an injury on account of which he . . . would have been entitled to the benefits provided by this [A]ct had such injury occurred within this State, such employe, . . . shall be entitled to the benefits provided by this [A]ct, provided that at the time of such injury:
>
> (1) His employment is principally localized in this State, or
>
> (2) He is working under a contract of hire made in this State in employment not principally localized in any state, or
>
> (3) He is working under a contract of hire made in this State in employment principally localized in another state

whose workmen's compensation law is not applicable to his employer, or

> (4) He is working under a contract of hire made in this State for employment outside the United States or Canada.

Section 305.2 of the Act,[8] 77 P.S. § 411.2(a). Employer suggests that this section bars Claimant's right to benefits because he suffered some hearing loss while working out-of-state and none of the above-referenced exceptions applies. Additionally, Employer contends that Claimant failed to show that the Ohio Workers' Compensation Law[9] is inapplicable to his claim.

However, Section 306(c)(8)(ix) of the Act, 77 P.S. § 513(8)(ix), provides that in occupational hearing loss cases, the date of injury shall be either "the earlier of the date on which the claim is filed or the last date of long-term exposure to hazardous occupational noise while in the employ of the employer against whom the claim is filed." Additionally, Section 101 provides that the Act shall apply to all injuries occurring within the Commonwealth, irrespective of the extraterritorial provisions of Section 305.2. Section 101 of the Act, 77 P.S. § 1.

██ Although Claimant experienced some hearing loss while working at Employer's Ohio facility, Claimant's injury date was October 25, 2000, the date that he

---

ing was in compliance with OSHA and ANSI regulations; is that correct?
A. [Dr. Chen] That's correct.
Q. Is there any way to tell whether the audiogram that was performed in 1971 was in compliance with OSHA or ANSI regulations?
A. OSHA not. ANSI regulations didn't exist at that time.
Q. Do you think it was in compliance with OSHA regulations?
[Employer's counsel]: For the record, OSHA regulations weren't in effect I think

until August 27, 1971. I will submit proof of that at the hearing.
(R.R. 130a–131a) Claimant's counsel then continued to question Dr. Chen about Claimant's exposure to noise just prior to the audiogram. Thus, although he was asked whether the 1971 audiogram met OSHA regulations, Dr. Chen was not afforded an opportunity to answer the question.

8. Added by Section 9 of the Act of December 5, 1974, P.L. 782.

9. Ohio Rev.Code §§ 4123.01–4123.99.

filed his petition for benefits. On that date, Claimant was employed in Pennsylvania at Employer's Allenport facility. Thus, Claimant did not suffer an injury outside the territorial limits of the Act and Employer's reliance on Section 305.2 is misplaced.

### III

■ In its third argument, Employer argues that the WCJ erred in failing to recognize a 1998 audiogram administered to Claimant as a pre-employment audiogram when Claimant transferred from Ohio to the Allenport facility. Based on its previous argument that it is not responsible for Claimant's loss of hearing that occurred while Claimant was working in Ohio, Employer suggests that when Claimant transferred to the Allenport facility, a new period of employment began. Therefore, Employer should only be responsible for that hearing loss occurring since 1998, or 3.1%, which is not compensable under the Act.

We find Employer's argument to be without merit. Claimant credibly testified that upon his transfers from Ohio to Pennsylvania and back again, he was not considered a "new hire" and retained all the benefits due him based on his seniority. Employer offered no evidence to the contrary. Accordingly, we conclude that the WCJ did not err in failing to consider Claimant's 1998 audiogram as a pre-employment audiogram.

### IV

In its final argument, Employer contends that Claimant failed to demonstrate that he was exposed to hazardous occupational noise within the last three years of his employment. Section 306(c)(8)(viii) of the Act requires that a claim petition for hearing loss due to hazardous occupational noise be filed within three years after the date of last exposure to hazardous occupational noise. Section 306(c)(8)(vii) of the Act, 77 P.S. § 513(8)(vii).

While Employer argues that upon his transfer to the Allenport facility, Claimant was exposed to hazardous occupational noise only 50% of the time at work, it completely disregards the fact that Claimant filed his petition within two years of his last exposure to hazardous occupational noise while in Employer's employ. Thus, once again, we must conclude that Employer's argument is without merit.

### IV

■ Claimant has filed a motion for counsel fees alleging that Employer's appeal is frivolous. Pennsylvania Rule of Appellate Procedure 2744 permits the imposition of reasonable attorney fees where it is determined that an appeal is frivolous, dilatory, obdurate or vexatious in nature. Pa. R.A.P 2744.

However, the issue of whether the WCJ improperly disregarded the results of the 1971 pre-employment audiogram touches upon an area of the law that is somewhat unsettled and, therefore, needed to be addressed. Thus, we do not believe that Employer's appeal was frivolous and we decline to award Claimant counsel fees.

### *ORDER*

AND NOW, this 16th day of July, 2003, the January 13, 2003 order of the Workers' Compensation Appeal Board is AFFIRMED.