**GENERAL ELECTRIC COMPANY and Electric Insurance Company, Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BOWER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 28, 1999.
Decided July 27, 1999.

Patricia K. Smith, Erie, for petitioners.

Pamela M. Schiller and Barbara E. Holmes, Pittsburgh, for respondent.

Before DOYLE, J., PELLEGRINI, J. and McCLOSKEY, Senior Judge.

PELLEGRINI, Judge.

General Electric Company and Electric Insurance Company (Employer) petition for review of an order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) awarding hearing loss benefits to Joseph Bower (Claimant) and finding that Claimant was exposed to hazardous occupational noise during the course of his employment.

Claimant, who worked for Employer for more than twenty years, filed a claim petition on June 26, 1995, alleging that he suffered bilateral hearing loss as a result of continuous exposure to hazardous occupational noise. Employer filed an answer denying all the material allegations in the petition.

Before the WCJ, Claimant testified that he began working for Employer in 1964 and worked until 1966, when he joined the Air Force. He stated that he was an interior electrician while in the Air Force, and while he participated in basic training, he wore ear protection when firing his weapon. Claimant stated he returned to work for Employer in 1970, and since 1989 he worked at Station 4 in Building 10 as a locomotive assembler, he was continuously exposed to loud noise in the form of sirens, hammering and the grinding of metal. He stated that the crane sirens sounded approximately ten to twelve times per hour, and that there was constant hammering and grinding throughout the workday. Claimant also testified that although he was required to wear ear protection for the last few years, he only wore protection approximately 60% of the time because he needed to communicate with other employees as a safety measure. He stated further that Employer never checked to see if his ear protection fit properly.

To medically support his position, Claimant offered the testimony of Stephen Froman, M.D., a board-certified otolaryngologist. He stated that Claimant told him that he had noticed a gradual hearing loss since 1989 and described being exposed to loud noise such as cranes and hammering. Dr. Froman also testified that Claimant admitted to only wearing ear protection some of the time while working. Dr. Froman performed audiologic testing on Claimant which revealed moderate to severe hearing loss in Claimant's right ear

and mild to moderate hearing loss in Claimant's left ear. Dr. Froman then calculated Claimant's percentage of binaural hearing loss as 19.06% according to the American Medical Association's Guide to the Evaluation of Permanent Impairment (AMA Guides).[1] He stated that Claimant's hearing loss was a result of cumulative exposure to loud noise while in the course of his employment. Dr. Froman did admit on cross-examination that he did not have specific information about Claimant's work site or the types of noises to which Claimant was exposed, but stated that from the description provided by Claimant, he believed Claimant was exposed to hazardous noise.

Employer introduced the testimony of Sidney Busis, M.D., also a board-certified otolaryngologist. Dr. Busis observed that Claimant's hearing was markedly worse in his right ear than in his left, which left Dr. Busis to conclude that Claimant's hearing loss was inconsistent with occupational noise induced hearing loss. Dr. Busis calculated Claimant's binaural hearing loss to be at 26.6% according to the AMA Guides. Dr. Busis opined, however, that while a portion of that loss might have been work-related, any hearing loss suffered as a result of occupational exposure would have reached its maximum in the mid–1980s and leveled off after that time. Thus, Dr. Busis concluded that a majority of Claimant's hearing loss was not due to occupational exposure, but due to age and other factors.

To refute Claimant's assertion that he was exposed to hazardous occupational noise, Employer introduced the testimony of Scott Webster (Webster) who was Claimant's supervisor for four years and worked for approximately eleven years in the same building with Claimant. Webster testified about Employer's hearing protection program and training sessions

1. Section 306(c)(8)(i) of Act 1 of 1995, Act of February 22, 1995, P.L. 1, *as amended,* 77 P.S. 513(8)(i), the hearing loss amendments to the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626, provide that the AMA Guides are to be used as the standard by which to measure the level of work-related binaural hearing loss.

at which employees were taught the proper way to insert hearing protection. He admitted, however, that the area in which Claimant worked could have been considered one of the loudest in the locomotive assembly process, involving the use of impact wrenches and cranes, and that Claimant often worked within twenty feet of loud machinery and often did not wear hearing protection.

Jeffrey Goller (Goller), who was Employer's Manager of Industrial Hygiene and was involved in the noise conservation program, also testified for Employer. Goller testified that he consistently monitored the noise level in the building in which Claimant worked and was also responsible for choosing the hearing protection supplied to all employees which was designed to reduce the noise to the inner ear below 85 decibels. He stated that the ambient noise levels in Building 10 in which Claimant worked were generally below 85 decibels on average, but that certain jobs in station four were above 90 decibels.[2] He also stated that a personal noise exposure test of Claimant in 1994, indicated that Claimant's noise exposure level was a time-weighted average of 86 decibels without hearing protection, but when hearing protection was worn, a 13 decibel attenuation could be expected. He admitted, however, that to the best of his knowledge, the 1994 testing was the only one conducted on Claimant personally. Furthermore, he testified that the noise level readings of three other employees in Station 4 were 87, 88 and 91 decibels respectively.

The WCJ credited the medical testimony of Dr. Froman over Dr. Busis and found that Claimant had medically established that his hearing loss was caused by long-term exposure to hazardous occupational noise. He also found that Claimant's testimony regarding the amount of noise he was exposed to and the use of hearing protection was supported by the credible testimony of Webster. Moreover, the WCJ credited the testimony of Goller as to Employer's hearing conservation program and to show that Claimant was personally exposed to noise levels which exceeded 86 decibels while in the course of his employment. Employer appealed to the Board which affirmed. This appeal followed.[3]

Employer contends that the WCJ erred in finding that Claimant suffered occupational hearing loss because it met its burden under Section 306(c)(8)(x) that Claimant was not exposed to hazardous occupational noise while in the course of his employment.[4] Employer maintains that because its witness, Goller, testified that the noise levels where Claimant worked were under 90 decibels, which is acceptable under the OSHA standards referenced in Section 306(c)(8)(iv)[5] of the

2. The following is a specific exchange between Goller and Employer's attorney at the April 4, 1996 hearing:

> Q: Prior to two years ago, were there activities in Building Ten which would have mandated the use of hearing protection anyway? -
> A: Yes
> Q: Would those be jobs that had noise exposure over 90 decibels?
> A: Above 90 and some were above 85.

(N.T. April 4, 1996, pp. 44–5).

3. This Court's scope of review is limited to a determination of whether an error of law has been committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence of record. *Stephens v. Workmen's Compensation Appeal Board (St. Ignatius Nursing Home)*, 168 Pa.Cmwlth. 570, 651 A.2d 200 (1994).

4. Section 306(c)(8)(x) provides, "[w]hether the employee has been exposed to hazardous occupational noise or has long-term exposure to such noise shall be affirmative defenses to a claim for hearing loss and not a part of the claimant's burden of proof."

5. Section 306(c)(8)(i) provides, in pertinent part:

> For permanent hearing loss which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the percentage of impairment shall be calculated by using the binaural formula provided in the [AMA Guides].

Act, 77 P.S. § 513(8)(iv),[6] the noise levels to which Claimant had been exposed could not, as a matter of law, have been hazardous. In essence, what Employer argues is that the Act's reference to 29 CFR 1910.95 indicates that the regulations are to be used as the sole standard to measure whether the level of occupational noise exposure is hazardous and, consequently, any noise level below the amount set forth in the regulations cannot be considered hazardous.

The Act sets forth in detail what an Employer needs to establish to defend on the basis that a Claimant was not exposed to work-related hazardous noise. Under Act 1, an Employer can defend a hearing loss claim by way of an affirmative defense if it can show that a claimant has not been exposed at work to "hazardous occupational noise" or has not had "long-term exposure" to such noise. Section 306(c)(8)(x) of the Act.[7] Section 105.4 of the Workers' Compensation Act, 77 P.S. § 25.4 defines "hazardous occupational noise" under Act 1 as an exposure to noise over that of the permissible noise exposure levels articulated in Table G–16 of the Occupational Safety and Health (OSHA) Standards of the federal government located in 29 C.F.R. § 1910.95.[8] 29 CFR 1910.95(a) provides a chart listing the maximum level of exposure to noise before the noise is deemed hazardous:

Permissible Noise Exposure

| Duration per day, hours | Sound Level dBA slow response |
|---|---|
| 8 | 90 |
| 6 | 92 |
| 4 | 95 |
| 3 | 97 |
| 2 | 100 |
| 1½ | 102 |
| 1 | 105 |
| ½ | 110 |
| ¼ or less | 115 |

The above regulation, therefore, sets out the permissible noise levels and duration levels to which an employee can be exposed. Act 1, while using the regulation as a basis for determining whether occupational noise is hazardous, also defines "long-term exposure" more strictly.

Section 105.6 of the Workers' Compensation Act provides in pertinent part:

> The term "long-term exposure," as used in this act, means exposure to noise exceeding the permissible daily exposure for at least three days each week for forty weeks of one year.

6. Section 306(c)(8)(iv) of the Act provides:
   The percentage of hearing impairment for which compensation may be payable shall be established solely by audiogram. The audiometric testing must conform to OSHA Occupational Noise Exposure Standards, 29 CFR 1910.95 (relating to occupational noise exposure) and Appendices C, D and E to Part 1910.95 (July 1, 1994).

7. We note that neither the WCJ, the Board nor the parties refer to these definitional provisions.

8. Section 105.4 of the Workers' Compensation Act provides in pertinent part:

   > The term "hazardous occupational noise," as used in this act, means noise levels exceeding permissible noise exposures as defined in Table G–16 of OSHA Occupational Noise Exposure Standards, 29 C.F.R. 1910.95[.]

   77 P.S. § 25.4.

77 P.S. § 25.6. Under the above definitions then, a claimant could be exposed to an eight-hour time-weighted average below 90 decibels two days a week and still be exposed to long-term occupational noise if noise levels to which a claimant was exposed exceeded those permissible for at least three days a week for 40 weeks of one year.

■ For an employer then to prove the affirmative defense that a claimant was not exposed to long-term hazardous occupation noise, it must establish:

- that claimant was not exposed to sound levels equal to or in excess of 90 dBA during the period the claimant is contending that he or she was exposed to long-term hazardous noise;

- if exposed to a noise level equal to or in excess of 90 dBA, the exposure during that period did not exceed the permitted daily exposure for three days a week for 40 weeks in any one year for which exposure to long-term hazardous noise is claimed.

■ In this case, although Employer's manager of industrial hygiene testified that Claimant's personal exposure for one day in 1994, was only 86 decibels, he admitted that to the best of his knowledge, that was the only time in which Claimant's exposure to hazardous noise was tested. Nor did Employer's manager testify that Claimant's noise exposure levels at Station 4 would not be the same on any other day or that the 86 decibel level was what Claimant was typically exposed to in the past, which is important because Employer's manager also admitted that there were other employees also working at Station 4 that tested above 90 decibels on an eight-hour time-weighted average. As a result, the Board and WCJ did not err as a matter of law in finding that Employer had not satisfied its burden of proving that Claimant was not exposed to long-term hazardous occupational noise as that term is defined in the Act.[9]

Accordingly, the order of the Board is affirmed.[10]

### ORDER

AND NOW, this 27th day of July, 1999, the order of the Workers' Compensation Appeal Board at No. A97–3805, dated November 16, 1998, is affirmed.

---

**9.** Although Table G–16 does indicate a permissible noise exposure of 90 decibels over an eight-hour day, the regulations also require the employer to do the following where noise exposure levels equal or exceed an eight-hour time-weighted average of 85 decibels: administer a hearing conservation program, 29 CFR 1910.95(c)(1); develop and implement a monitoring program, 29 CFR 1910.95(d)(1); establish and maintain an audiometric testing program, 29 CFR 1910.95(g)(1); and make hearing protection available, 29 CFR 1910.95(i)(1).

**10.** Claimant also contends that he should be awarded attorney's fees because Employer is merely challenging the credibility determinations made by the WCJ. Although a good portion of Employer's argument challenges the credibility determinations made by the WCJ, it raises issues of statutory interpretation not previously determined by this Court. Therefore, we deny Claimant's request for fees.