**Kevin FLATLEY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MALLINCKRODT CHEMICAL, CALSICAT DIV.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 14, 2002.

Decided July 25, 2002.

Reargument Denied October 2, 2002.

Kevin W. Barron, Erie, for petitioner.

Marion H. Griffin, Philadelphia, for respondent.

Before FRIEDMAN, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Kevin Flatley (Claimant) appeals from a decision of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) denying his Claim Petition for work-related hearing loss. We affirm.

On March 25, 1999, Claimant filed a Claim Petition alleging that, as of January 29, 1999, he suffers from bilateral hearing loss as a result of being exposed to extensive workplace noise while working for Mallinckrodt Chemical (Employer). Employer filed an Answer denying the allegations set forth in Claimant's Claim Petition.

At the hearings before the WCJ, Claimant testified that he began working for Employer in 1984. Claimant works twelve-hour shifts for three days in a row and then has three days off of work, then works three nights in a row and has three nights off of work. Claimant first worked in the sphere plant for two and a half years, where he was exposed to loud noises from blowers and heaters during his entire shift. Claimant then worked in the cone room for two years. However, the noise he was exposed to here was not as bad as the noise in the sphere plant. Claimant then worked in the copper chrome plant for a short period of time and then transferred to his current position in the nickel plant. Claimant first worked in the "wet end" of the nickel plant for two years and then moved downstairs to the back end, or "dry end."[1] Claimant testified that the noise was greater in the dry end than it was at the wet end. In this area, Claimant worked on the R 7 unit. Claimant testified that while this machine was being loaded, which took two hours every day, a significant amount of noise was produced (N.T. 8/25/99, p. 19–21).

In support of his Claim Petition, Claimant presented the deposition testimony of Stephen E. Schell, M.D. After examining Claimant, Dr. Schell determined that Claimant suffers from a 16.3 percent binaural hearing impairment as a result of work-related noise exposure (N.T. 9/21/99, pp. 10–11). On cross-examination, Dr. Schell stated that Claimant's hearing loss was not symmetrical, as he had a 7.5 percent greater hearing loss in one ear (N.T. 9/21/99, p. 18).

In opposition to the Claim Petition, Employer presented the deposition testimony of Sidney N. Busis, M.D. After examining Claimant, Dr. Busis determined that Claimant has a 15 percent hearing impairment in his right ear and a 26.25 percent hearing impairment in his left ear with a binaural hearing impairment of 16.88 percent. Dr. Busis testified that this indicated that Claimant's hearing loss was not caused by noise, as both ears typically have the same amount of hearing loss when noise is the cause. In addition, Dr. Busis opined that Claimant's hearing loss is not typical of occupational noise-induced hearing loss because the audiometric curve for his left ear is flat at the high frequencies, whereas with noise-induced hearing

---

1. Employer manufactures chemical catalysts in powder and pellet form (N.T. 2/03/00, pp. 7–8). The wet end is referred to as such because the material being processed in this area is a wet slurry. This slurry is then dried in the back end, or dry end (N.T. 2/03/00, pp. 16–17).

loss there is usually a notch at 4,000 hertz. Dr. Busis did concede, however, that there is small notch on the audiometric curve for Claimant's right ear. Furthermore, Dr. Busis stated that the dosimetry studies from 1990–1998 that he reviewed showed that Claimant was not exposed to enough noise on a time-weighted average (TWA) basis to have experienced noise-induced hearing loss (N.T. 12/07/99, pp. 12–36). Although Dr. Busis could rule out noise as a cause of Claimant's hearing loss, he could not determine what actually caused Claimant's hearing loss.

Employer also presented the testimony of Thomas C. Maxwell, who is the safety engineer for Employer. Mr. Maxwell reviewed records from 1990 to 1998 concerning noise level readings at Employer's plant and prepared a list of the noise levels in the areas where Claimant worked, which was admitted into evidence as Employer's Exhibit No. 5. This document shows that in 1998, 1997 and 1996, the eight-hour TWA was never above 90 decibels. He also testified that Claimant worked in the nickel back end, or dry end, 90 to 95 percent of the time (N.T. 3/06/2000, p. 8). For the dosimeter reading on November 4, 1997 at the nickel back end, Claimant was the employee who wore the dosimeter. Thus, this reading shows Claimant's actual noise exposure, which was 81.4 decibels on an eight-hour TWA. Larry Bowman, who is the production coordinator for Employer, also testified on behalf of Employer. Mr. Bowman prepared a chart analyzing production operations at Employer's plant, which was admitted into evidence as Employer's Exhibit No. 13. The dates for this analysis correlate to the dates on which dosimeter readings were taken as set forth in Employer's Exhibit No. 5 (N.T. 8/24/00, pp. 4–5). In particular, this analysis shows which production units in Employer's plant were in operation during the time when the dosimeter readings were taken. This document shows that on November 4, 1997 when Claimant was wearing the dosimeter, his noise exposure was 81.4 decibels on an eight-hour TWA and that, at this time, all the units were operating, including the "R 7" unit. Although exhibit B to Employer's Hearing Conservation Program (Claimant's Exhibit No. 3) shows that the R 7 unit produces sound greater than 90 decibels while it is being loaded, Employer's Exhibit No. 13 shows that the average noise produced in that area on the day that it was loaded was less than 90 decibels (N.T. 8/24/00, p. 12). Mr. Bowman explained that the R 7 unit makes noise in excess of 90 decibels while it is being loaded, but that this process only takes 2–3 hours and is only performed every 26 to 48 hours (N.T. 8/24/00, pp. 14–15).

■ The WCJ issued a decision and order circulated on January 31, 2001. In that decision, the WCJ found that, based on the testimony of Mr. Maxwell and Mr. Bowman, Claimant was not exposed to hazardous occupational noise of 90 decibels or greater on a long-term basis. The WCJ further found that "the loading of the reactors (R7, R8, R9) does at times created noise over 90 dBA; however, since this is only done for two (2) to three (3) hours every 36 to 48 hours and the claimant works three (3) days on and three (3) days off, this Judge finds that his exposure is not long term as required under Section 306(c)(8)(viii)" (Finding of Fact No. 11). The WCJ also found the testimony of Employer's medical expert, Dr. Busis, more persuasive than the testimony of Claimant's medical expert. Accordingly, the WCJ denied Claimant's Claim Petition. Claimant appealed to the Board, which

affirmed the decision of the WCJ. This appeal followed.[2]

On appeal, Claimant argues that: 1) the Board erred as a matter of law by asserting that Claimant's exposure to hazardous occupational noise more than three years prior to the filing of the claim petition was immaterial and 2) the WCJ erred as a matter of law in finding that Employer sustained its burden of proving that Claimant was not exposed to occupational noise that was hazardous or long-term because: a) the Employer's dosimetry records clearly indicate that Claimant was exposed to hazardous occupational noise and the testimony of Mr. Bowman and Mr. Maxwell are in direct conflict with this evidence and b) Dr. Busis, the Employer's medical expert, did not give an opinion as to the actual cause of Claimant's hearing loss.

■ The requirements for establishing a claim to benefits for work-related hearing loss are set forth in Section 306(c)(8) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 513.[3] The burden of

**2.** This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek* ), 537 Pa. 32, 640 A.2d 1266 (1994).

**3.** Section 306(c)(8) states that:
(i) For permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the percentage of impairment shall be calculated by using the binaural formula provided in the Impairment Guides. The number of weeks for which compensation shall be payable shall be determined by multiplying the percentage of binaural hearing impairment as calculated under the Impairment Guides by two hundred sixty weeks. Compensation payable shall be sixty-six and two-thirds per centum of wages during this number of weeks, subject to the provisions of clause (1) of subsection (a) of this section . . .
(iii) Notwithstanding the provisions of subclauses (i) and (ii) of this clause, if there is a level of binaural hearing impairment as calculated under the Impairment Guides which is equal to or less than ten per centum, no benefits shall be payable. Notwithstanding the provisions of subclauses (i) and (ii) of this clause, if there is a level of binaural hearing impairment as calculated under the Impairment Guides which is equal to or more than seventy five per centum, there shall be a presumption that the hearing impairment is total and complete, and benefits shall be payable for two hundred sixty weeks.

(iv) The percentage of hearing impairment for which compensation may be payable shall be established solely by audiogram. The audiometric testing must conform to OSHA Occupational Noise Exposure Standards, 29 CFR 1910.95 (relating to occupational noise exposure) and Appendices C, D and E to Part 1910.95 (July 1, 1994) . . .
(vi) An employer shall be liable only for the hearing impairment caused by such employer. If previous occupational hearing impairment or hearing impairment from nonoccupational causes is established at or prior to the time of employment, the employer shall not be liable for the hearing impairment so established whether or not compensation has previously been paid or awarded. . . .
(viii) Whenever an occupational hearing loss caused by long-term exposure to hazardous occupational noise is the basis for compensation or additional compensation, the claim shall be barred unless a petition is filed within three years after the date of last exposure to hazardous occupational noise in the employ of the employer against whom benefits are sought.
(ix) The date of injury for occupational hearing loss under subclause (i) of this clause shall be the earlier of the date on which the claim is filed or the last date of long-term exposure to hazardous occupational noise while in the employ of the employer against whom the claim is filed.
(x) Whether the employe has been exposed to hazardous occupational noise or has long-term exposure to such noise shall be affirmative defenses to a claim for occupational hearing loss and not a part of the claimant's burden of proof in a claim.
77 P.S. § 513.

proof is on the claimant to establish that he suffers from a permanent hearing loss of 10 percent or greater that is medically established to be work-related and caused by the long-term exposure to hazardous occupational noise. Whether the employee has, in fact, been exposed to hazardous occupational noise is not part of the claimant's burden of proof. Instead, the employer may assert as an affirmative defense that the claimant's exposure to such noise was not hazardous or long-term. Section 306(c)(8)(x). *See also General Electric Co. v. Workers' Compensation Appeal Board (Rizzo)*, 737 A.2d 852 (Pa. Cmwlth.1999).

Additionally, Section 105.6 of the Act provides that: "The term "long-term exposure," as used in this act, means exposure to noise exceeding the permissible daily exposure for at least three days each week for forty weeks of one year." Section 105.4 of the Act provides that: "The term "hazardous occupational noise," as used in this act, means noise levels exceeding permissible noise exposures as defined in Table G–16 of OSHA Occupational Noise Exposure Standards, 29 CFR 1910.95 (relating to occupational noise exposure) (July 1, 1994)." 77 P.S. § 25.4.[4] "Section 105.4 of the Act, by incorporating OSHA's occupational noise exposure standards, allows exposure up to 90 decibels for an eight hour day before the exposure is deemed hazardous." *Toth v. Workers' Compensation Appeal Board (USX Corporation)*, 737 A.2d 838, 840 (Pa.Cmwlth. 1999).

Claimant first argues that, as evidenced by Employer's Exhibit No. 5, Claimant was exposed to noise levels in excess of 90 decibels on a TWA in 1993 and that the WCJ and the Board erred by ignoring evidence of Claimant's exposure to noise at this time. We disagree. As we explained in *Meadville Forging Company v. Workers' Compensation Appeal Board (Artman)*, 747 A.2d 958 (Pa.Cmwlth.2000):

All that a claimant has to do to meet his or her burden under Section 306(c)(8)(i) of the Act is to prima facie establish that the claim was timely filed by showing that he or she was exposed to occupational noise while working for Employer *during the three years preceding the claim. The Employer then may rebut that it was timely filed by establishing that claimant's noise exposure was not hazardous or long-term during that time.*

*Id.* at 961 (emphasis added). Thus, in order to determine whether Employer has met its burden of proving that Claimant's exposure to noise was not hazardous or not long-term, the relevant period of time is three years previous to the date the Claim Petition was filed, as Claimant is still working for Employer.[5] Any exposure to hazardous noise outside this time period is irrelevant because, even if any such exposure did occur, Claimant's Claim Petition for hearing loss caused by that exposure would be barred by the statute of limitations. Claimant filed the Claim Petition on March 25, 1999. Thus, evidence that

4. Table G 16 sets forth the permissible noise exposure:

| Duration per day, hours | Sound level dBA slow response |
|---|---|
| 8 | 90 |
| 6 | 92 |
| 4 | 95 |
| 3 | 97 |
| 2 | 100 |
| 1 1/2 | 102 |
| 1 | 105 |
| 1/2 | 110 |
| 1/4 or less | 115 |

5. We note that if Claimant no longer worked for Employer, the relevant time period would be three years previous to Claimant's last day of exposure to occupational noise, which is normally the last day of employment. *See* 77 P.S. § 513(c)(8)(ix).

Claimant was exposed to hazardous occupational noise in 1993 is irrelevant, as this is more than three years before the Claim Petition was filed. *See also General Electric Co. v. Workers' Compensation Appeal Board (Rizzo )*, 737 A.2d 852, 858 (Pa. Cmwlth.1999) ("If Claimant was not exposed to hazardous occupational noise within three years of the date on which he filed his claim petition, Claimant's claim was untimely filed. However, if Claimant was exposed to hazardous noise within the three years period prior to filing his claim petition, then Claimant's petition was timely filed and he should receive benefits.")

■ Next, Claimant argues that Employer failed to prove as an affirmative defense that he was not exposed to hazardous occupational noise. In support of this argument, Claimant first points out that the dosimeter readings show that Claimant actually was exposed to noise in excess of 90 decibels and that, for this reason, Employer has failed to prove as an affirmative defense that Claimant was not exposed to hazardous noise. Claimant first cites the evidence that, in 1993, the noise levels in the dry end were in excess of 90 decibels on a TWA. However, for the reason set forth above, evidence of noise exposure from 1993, which is more than three years before the Claim Petition was filed, is irrelevant. Claimant next cites exhibit B to Employer's Hearing Conservation Program (Claimant's Exhibit No. 3), which states that the noise in the nickel plant while using the R7 loader exceeds 90 decibels. Because Claimant and Employer's experts testified that loading this unit was part of Claimant's job, Claimant asserts that this evidence shows that he was exposed to hazardous noise.

Although it is undisputed that the R7 loader does produce noise in excess of 90 decibels, the dosimeter readings clearly show that the noise exposure in this area of the plant was less than 90 decibels on a TWA, as the R7 unit only produces this noise when it is being loaded, which only occurs for a few hours every 26–48 hours. In fact, on November 4, 1997, the dosimeter, which was worn by Claimant, registered an exposure of 81.4 decibels for an eight-hour TWA (Employer's Exhibit No. 5) and Employer's "Nickel back end production analysis" shows that the R7 unit, as well as all the other units in the dry end, were operating at this time (Employer's Exhibit No. 13). Thus, although there is evidence that Claimant was exposed to occupational noise in excess of 90 decibels, there is no evidence that this exposure was hazardous and long-term given the actual TWA dosimeter readings and the frequency with which the R 7 unit was loaded. Therefore, the WCJ did not err by finding that Employer sustained its burden of proving as an affirmative defense that Claimant was not exposed to long-term hazardous occupational noise in the three years prior to the filing of the Claim Petition.

■ Second, Claimant asserts that although Employer's medical expert, Dr. Busis, stated that Claimant's hearing loss was not work-related, he failed to state what actually caused his hearing loss. Claimant contends that because Dr. Busis failed to state what actually caused the hearing loss, the testimony of his medical expert, Dr. Schell, that his hearing loss was work-related is unrebutted and the decision of the Board should be reversed. We disagree. First, for the reasons set forth above, Employer has proven that Claimant was not exposed to noise that was hazardous and long-term in the three years preceding the filing of the Claim Petition. Thus, even if Dr. Schell's testimony was unrebutted, Claimant's Claim Petition would still be untimely. *General Electric.* However, even if Employer had

not sustained its burden of proof, Claimant cites no authority for this proposition, and we can find none. The purpose of the independent medical examination (IME) performed by Dr. Busis was to determine whether Claimant's hearing loss was work-related, not to determine the cause of Claimant's hearing loss in the event that his hearing loss was found not to be work-related. To adopt such a rule as Claimant suggests would be unworkable and outside the scope of the limited purpose of an IME, which is to evaluate whether one factor, i.e. work, is the cause the injury claimed to be work-related in the claim petition.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, July 25, 2002, the order of the Workers' Compensation Appeal Board docketed at A01–0545 and dated February 11, 2002 is hereby AFFIRMED.