**JOY MINING MACHINERY COMPANY, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ZERRES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 20, 2010.

Decided Nov. 19, 2010.

Christopher L. Wildfire and Lee Ann Rhodes, Pittsburgh, for petitioner.

Daniel K. Bricmont, Pittsburgh, for respondent.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Joy Mining Machinery Company (Employer) petitions this court for review of an order of the Workers' Compensation Appeal Board (WCAB), dated February 25, 2010, which affirmed the order of a Workers' Compensation Judge (WCJ) granting the claim petition filed by Charles Zerres (Claimant). We affirm.

Claimant has worked for Employer for over forty years, most of them as a ma-chine operator. Claimant began wearing hearing muffs in the 1970s, but, in some of the jobs he did for Employer, he could still hear the noise through the muffs. Claimant continues to wear hearing protection up through the present; however, he now wears earplugs and sometimes earplugs with hearing muffs. Still, sometimes the loud noise hurts Claimant's ears. A tool called a waukeshaw squeals and drives Claimant "crazy," even when he wears earplugs and hearing muffs. The hammering aggravates Claimant, and it goes on every day, but not constantly. Claimant also works near the boom cell, which is a particularly noisy operation, and there is some air arcing in the part of the plant where Claimant works. (Findings of Fact, Nos. 5, 8–9.)

Claimant also has been exposed to noise outside of work. He has hunted, and he has operated farm equipment as a youth, small woodworking machinery in his home, and lawn care equipment. Claimant had no concerns about his hearing until the late 1980s. He reported the problem at work, and he was sent to see a doctor. More recently, Claimant was seen by Dr. Michael C. Bell, who informed Claimant that he had a hearing loss in excess of 10%. (Findings of Fact, No. 5.)

Claimant subsequently filed a claim petition for occupational hearing loss as of December 1, 2006, caused by exposure to hazardous noise at work. Employer filed a response, denying the material averments in the petition, and hearings were held before the WCJ.

Claimant testified on his own behalf and presented the January 12, 2007, report of Dr. Bell to support his hearing loss claim.[1]

---

1. Claimant had the burden of proving "that he suffers from a permanent hearing loss of 10 percent or greater that is medically established to be work-related and caused by long-term exposure to hazardous occupational noise." *Flatley v. Workers' Compensation Appeal Board (Mallinckrodt Chemical, Calsicat Div.),* 803 A.2d 862, 866–67 (Pa.Cmwlth.

Dr. Bell documented Claimant as having suffered a binaural hearing loss of 13.125%. Dr. Bell reviewed Claimant's history of noise exposure inside and outside of work and opined that Claimant's primary source of noise exposure was his years of work with Employer. Dr. Bell believed "that based on the Claimant's history, physical examination and audiometric testing results the Claimant's 13.125% hearing impairment is causally related to his 38–year cumulative exposure to loud industrial noise at [Employer]." (Findings of Fact, No. 12.)

In opposition to the claim, Employer presented the July 27, 2007, report of Dr. Moises A. Arriaga, who agreed that Claimant's binaural hearing impairment is 13.125%. According to Dr. Arriaga, however, the pattern of Claimant's hearing loss is atypical for purely occupationally-induced hearing loss. Rather, Claimant's hearing loss is multifactorial, caused in part by recreational shooting, his use of recreational tools, occupational noise, a familial predisposition to hearing loss in old age, central nervous system circulatory changes and probable endolymphatic hydrops. Dr. Arriaga opined that "9.2% of the Claimant's binaural hearing loss is the maximum impairment potentially attributable to occupational noise from his December 1, 2006 audiogram." (Findings of Fact, No. 13.)

Employer also presented the testimonies of certain current and former employees regarding the noise to which Claimant was subjected at work, including the testimony of Christopher Wright, a general foreman who was Claimant's supervisor from 1995 to 1998. Wright testified to the noise level on the floor where Claimant worked, indicating employees could talk normally there, but also acknowledging that, when certain processes like air arcing, hammering and grinding occur, it might be difficult to converse normally. (Findings of Fact, No. 6.)

Employer further presented the deposition testimony of Douglas Callen, Ph.D., the owner of Hearing Conservation Associates, regarding Employer's hearing conservation program. Dr. Callen explained that he tests five employees each month, including machinists and employees in the area where Claimant works. He attaches a dosimeter to the employee, which allows him to determine a time-weighted average of the noise level for the period the employee wears it. Although Dr. Callen agreed that an employee might be exposed to noise levels above 90 dB for ten or twenty minutes, there was not one eight-hour time-weighted average measured by the dosimeter that equaled or surpassed 90 dB, OSHA's standard for a safe environment. (Findings of Fact, No. 16.)

2002). Section 306(c)(8)(i) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 513(8)(i), provides: "For permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the percentage of impairment shall be calculated by using the binaural formula provided in the Impairment Guides." Section 105.6 of the Act, 77 P.S. § 25.6, added by the Act of February 23, 1995, P.L. 1, provides that "[t]he term 'long-term exposure,' as used in this act, means exposure to noise exceeding the permissible daily exposure for at least three days each week for forty weeks of one year." Section 105.4 of the Act, 77 P.S. § 25.4, added by the Act of February 23, 1995, P.L. 1, provides that "[t]he term 'hazardous occupational noise,' as used in this act, means noise levels exceeding permissible noise exposures as defined in Table G–16 of OSHA Occupational Noise Exposure Standards, 29 C.F.R. 1910.95 (relating to occupational noise exposure) (July 1, 1994)." By incorporating OSHA's occupational noise exposure standards, section 105.4 allows exposure up to ninety decibels for an eight-hour day before such exposure is considered hazardous. Flatley, 803 A.2d at 867.

However, on cross-examination, Dr. Callen agreed that the noise level would depend upon production at any given time; that different materials used in the work process would cause different types and levels of noise; that production techniques and types of materials might be different than on the days when the noise levels were sampled; that, on days he did not measure the noise, he did not know if the noise levels exceeded 90 dB; and that the area where Claimant works was one of the noisiest places in the plant. (*Id.*)

After considering the evidence, the WCJ accepted Claimant's testimony as fact, (Findings of Fact, No. 18), and also credited the medical opinion of Claimant's expert, Dr. Bell, over the medical opinion of Dr. Arriaga. In doing so, the WCJ stated that Dr. Bell "accurately delineated Claimant's work history, medical history and non-work related noise exposure." (Findings of Fact, No. 19.) The WCJ discredited Dr. Arriaga's opinion that "non-work related factors were causative of just enough of the Claimant's hearing loss to bring him below the 10% threshold." (Findings of Fact, No. 20.) However, the WCJ partially credited Dr. Arriaga's opinion that "Claimant's binaural hearing loss is 13.125%" and also partially credited Dr. Arriaga to the extent he agreed "that the noisy work environment was a causative factor" in Claimant's hearing impairment. (*Id.*)

Beyond the medical reports, the WCJ credited Wright's testimony inasmuch as he stated that the noise levels in the plant could vary depending on the tools and metals being used. (Findings of Fact, No. 21.) [2] Finally, the WCJ found that Dr. Callen's deposition testimony, while credible with respect to Employer's attempts at hearing conservation, failed credibly to establish that Claimant was not exposed to hazardous occupational noise. (Findings of Fact, No. 24.) Consequently, the WCJ concluded that Claimant met his burden of proving that he sustained a 13.125% binaural hearing loss due to his long-term exposure to hazardous noise while working for Employer, and Employer did not prove otherwise. (Conclusions of Law, Nos. 2–3.) Employer appealed to the WCAB, which affirmed. Employer now petitions this court for review.[3]

## I. Preceding Three Years

■ Employer first argues that Claimant was not entitled to hearing loss benefits because he failed to show that he was exposed to hazardous occupational noise during the three-year period preceding his claim for benefits.[4] According to Employer, Claimant never specifically addressed this time period during his testimony, and

2. The WCJ, however, discredited Wright's testimony with respect to Claimant's noise level exposure because Wright "only started working for the employer years after the Claimant." (Findings of Fact, No. 21.) Although, based on the case law we cite later in our opinion, this reason for partially discrediting Wright was less than substantial, we are satisfied that the error is harmless in light of all of the other findings made by the WCJ.

3. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

4. Section 306(c)(8)(viii) of the Act, 77 P.S. § 513(8)(viii), provides:

Whenever an occupational hearing loss caused by long-term exposure to hazardous occupational noise is the basis for compensation or additional compensation, the claim shall be barred unless a petition is filed within three years after the date of last exposure to hazardous occupational noise in the employ of the employer against whom benefits are sought.

the WCJ did not consider this relevant time period in his findings of fact.[5] Employer's argument is unavailing.

All a claimant must do to meet his or her burden under section 306(c)(8)(i) of the Act is to *prima facie* establish that the claim was timely filed by showing he or she was exposed to occupational noise while working for the employer during the three years preceding the claim. *Flatley v. Workers' Compensation Appeal Board (Mallinckrodt Chemical, Calsicat Div.)*, 803 A.2d 862, 867 (Pa.Cmwlth.2002).

Here, Claimant testified, and the WCJ found, that Claimant has had ongoing exposure to loud noise at work since the 1970s. Claimant reported hearing problems at work in the late 1980s and wears hearing protection "even up through the present." (Findings of Fact, No. 5; N.T., 5/2/2007, at 83–87.) Indeed, Claimant testified, and the WCJ found, that Claimant had been exposed to loud noises at work before he came to testify at the November 2, 2007, hearing. (Findings of Fact, No. 9; N.T., 11/2/2007, at 58.) Thus, the employer's first argument fails.

## II. Noise Level Studies

■ Next, Employer argues that the noise level survey evidence it submitted accurately represented the sound levels of its facilities because the surveys were conducted according to OSHA standards. Employer further asserts that the WCJ improperly rejected evidence of Dr. Callen's noise level studies over Claimant's personal impressions of his noise exposure. This argument also fails.

■ "Whether the employee has, in fact, been exposed to hazardous occupational noise is not part of the claimant's burden of proof. Instead, the employer may assert as an affirmative defense that the claimant's exposure to such noise was not hazardous or long-term." *Flatley*, 803 A.2d at 867. In order to prove its affirmative defense, we have explained that an employer must establish

either 1) that the claimant was not exposed to sound levels equal to or in excess of 90 dBA during the alleged period of exposure to long-term hazardous noise; or 2) that such exposure did not exceed the permitted daily exposure for three days a week for 40 weeks in any one year for which exposure to long-term hazardous exposure is claimed.

*Joy Mining Machinery v. Workers' Compensation Appeal Board (Noggle)*, 805 A.2d 1279, 1282 (Pa.Cmwlth.2002).

In *General Electric Company v. Workers' Compensation Appeal Board (Bower)*, 734 A.2d 492 (Pa.Cmwlth.1999), the employer attempted to prove as an affirmative defense that the claimant was not exposed to noise levels in excess of 90 dB by presenting the claimant's personal noise exposure test showing that, for one day, the claimant was exposed to only 86 dB of noise. This court held that the employer failed to prove the affirmative defense because the employer tested the claimant's exposure for only one day and because the employer's witness did not testify that the exposure was typical and would be the same on any other day. *Id.* at 496.

Here, there is no evidence that Employer conducted a test of Claimant's personal exposure to noise. None of the dosimetry readings presented as evidence are for Claimant. Moreover, Employer's expert witness, Dr. Callen, acknowledged that noise intensity will vary from day to day depending on the production techniques used and that, when he is not there to

5. However, the WCJ specifically found that Claimant was exposed to processes that he testified created occupational noise on the morning of his November 2, 2007, testimony.

measure the noise, he cannot say whether the noise levels exceed 90 dB. (N.T., 9/27/2007, at 47–48.) Dr. Callen further admitted that the area where Claimant works is one of the plant's noisiest areas. (*Id.* at 49.) Thus, despite Dr. Callen's observation that none of the individuals who were tested in the structural department had a dosimetry level above 90 dB on a time-weighted average basis, the WCJ could still conclude that those noise levels did not reflect Claimant's individual exposure. (Findings of Fact, No. 24.)

### III. Competency

Finally, Employer argues that Claimant was not entitled to an award of benefits because, due to inconsistencies between Claimant's testimony and Dr. Bell's report, Dr. Bell's report was not competent to establish that Claimant suffered a work-related binaural hearing loss. We disagree.

■ Initially, we note that the parties agreed to the submission of medical reports in this case involving a claim of less than fifty-two weeks of benefits. We have held that, where an employer could have deposed a claimant's medical expert on any inconsistencies it believed affected the competency of his opinion, an employer's failure to do so precludes it from raising the issue at a later time. *See Joy Mining Machinery,* 805 A.2d at 1283. Thus, here, because Employer failed to depose Dr. Bell regarding inconsistencies between his report and Claimant's testimony, Employer is precluded from raising the issue.

■ Even if we were to address the matter, Employer would not prevail. In *Helvetia Coal Company v. Workers' Compensation Appeal Board (Learn),* 913 A.2d 326, 331 (Pa.Cmwlth.2006) (citation omitted), this court stated:

A medical witness' opinion must be viewed as a whole, and inaccurate information will not defeat the opinion unless [the opinion] is dependent upon the inaccuracy. Any inconsistencies between [the doctor's] testimony and Claimant's testimony regarding his work history and noise exposure are a matter of the weight to be given to [the doctor's] testimony, not the competency of his testimony.

The following year, in *DeGraw v. Workers' Compensation Appeal Board (Redner's Warehouse Markets),* 926 A.2d 997, 1001 (Pa.Cmwlth.2007), this court stated that a medical expert's opinion is incompetent only if it is based **solely** on inaccurate or false information.

Here, Employer asserts that Dr. Bell reported that Claimant used ear muffs about 50% of the time, but Claimant testified that he wore hearing protection on a consistent basis since the 1970s. Claimant testified that: (1) he wore muffs "only in the noise, the noisy times" and "I didn't wear them all the time" (N.T., 5/2/2007, at 20–21); (2) he "tried" not to be exposed to certain noises without muffs, (*Id.* at 26); (3) he started wearing hearing protection more in 1985 or 1986, and he always used ear plugs in parts of the plant where it was mandatory, whether it was posted or not, (*Id.* at 83–84); (4) "I tried to wear [hearing protection] as much as I can, but, also, when I was working alone, I—I only put them in when I knew that I was going to be getting into noise," (N.T., 11/2/2007, at 56); and (5) "I don't wear muffs all the time.... I wear ear plugs ... [a]nd/or muffs." (*Id.* at 60.)

We fail to see a significant difference between Claimant's testimony about his occasional use of muffs and Dr. Bell's report. We recognize that Dr. Bell did not discuss Claimant's use of ear plugs, but Employer does not specifically argue that Dr. Bell failed to consider Claimant's use

of ear plugs. Moreover, in *Helvetia Coal*, the employer argued that a doctor's opinion was incompetent because it was based on inaccurate information about the claimant's use of hearing protection, and this court rejected the argument, noting that whether a person is exposed to hazardous noise is to be measured without the use of hearing protection devices. *Helvetia Coal*, 913 A.2d at 331.

Employer also asserts that Dr. Bell incorrectly stated in his report that claimant worked in a coal mine. However, in relating the history of Claimant's exposure to noise at work, Dr. Bell stated that Claimant worked with the milling machines, where the noise was mild; that he worked in the horizontal boring mill Plant # 2, where the noise was moderate to severe; that he worked ten years in the structural area of horizontal boring mill Plant # 1, where the noise was severe on a daily basis; and that he worked thirteen years as a CNC operator in the structural area, where the noise was very severe. (Certified Record (C.R.), Dr. Bell's 1/12/2007, report at 2.) Dr. Bell never mentioned his belief that Claimant worked in a coal mine when discussing noise exposure or the cause of Claimant's hearing loss.

Finally, Employer asserts that Dr. Bell believed that Claimant hunted eight to ten days a year from 1960 to 1988 and did not use guns for any other recreational purpose. Employer argues that Dr. Bell's belief was incorrect because Claimant testified that he hunted sporadically through the year 2000 and participated in skeet shooting for about six months in 1968. (N.T., 5/2/2007, at 47–48, 73, 76.) However, Dr. Bell stated in his 2007 report that Claimant "had not fired a weapon in the last 7 years," i.e., that Claimant had not fired a weapon since 2000. Thus, Dr. Bell knew that Claimant sporadically used firearms until 2000. (C.R., Dr. Bell's 1/12/2007, report at 1.) To the extent that Dr. Bell was unaware of six months of skeet shooting by Claimant in 1968, it goes to the weight of Dr. Bell's opinion, not its competency.

Accordingly, we affirm.

### ORDER

AND NOW, this 19th day of November, 2010, the order of the Workers' Compensation Appeal Board, dated February 25, 2010, is hereby affirmed.