IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Enoch Ferencz,                              :
                                            :
                    Petitioner              :
                                            :
          v.                                : No. 1019 C.D. 2017
                                            : Submitted: December 1, 2017
Workers' Compensation Appeal                :
Board (Standard Steel, LLC),                :
                                            :
                    Respondent :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. WESLEY OLER, Jr., Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:  April 10, 2018


          Enoch Ferencz (Claimant) petitions for review of the June 30, 2017
order of the Workers' Compensation Appeal Board (Board), which affirmed the
decision of a workers' compensation judge (WCJ) denying Claimant's claim
petition.  We affirm.

          On May 5, 2015, Claimant submitted a claim petition alleging that he
suffers from hearing loss of approximately 44.1% that was caused by his constant
exposure to hazardous noise during his 40 years of employment with Standard Steel,
LLC (Employer).  Reproduced Record (R.R.) at 1a-4a.  Employer filed a timely
answer denying the material allegations and asserting as an affirmative defense that

Claimant had not been exposed to long-term hazardous occupational noise.[1]  R.R. at 6a-9a.

At an August 21, 2015 hearing, Claimant testified that he has worked for Employer and its predecessor since 1969 and has worked as a machine operator for more than 20 years.  Claimant stated that he typically works six days a week for six-and-a-half to seven hours a day.  R.R. at 17a-18a.  Claimant said that with the exception of breaks, he spends his entire shift operating a Snyder Bore machine, boring railroad wheels and facing steel.  R.R. at 18a.  He stated that while he is boring and facing the wheels, there is a loud and shrill high decibel noise, which he described as louder than a fire truck siren or 100,000 people screaming and yelling.  Claimant estimated that it takes a minute and 17 seconds to cut each new wheel, adding that "it could be more or it could be maybe a little less."  R.R. at 22a.  He said that the noise continues for more than a minute of each cycle and that he stands about eight to ten feet from the machine.  R.R. at 22a-24a.  Claimant testified that the position of machine operator is the only job he has performed in the last 20 years.  He acknowledged that he has always worn ear protection.  *Id.*

Claimant testified that he saw Dr. Kathryn O, an audiologist at Yeagertown Audiology, for hearing difficulties about ten years ago and was prescribed hearing aids.  He said that he also suffers from tinnitus, which Dr. O diagnosed when he first saw her.  Claimant stated that he has no family history of hearing loss.  R.R. at 25a-27a.

---

[1] Section 306(c)(8)(x) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, states that the issue of "[w]hether the employe has been exposed to hazardous occupational noise or has long-term exposure to such noise shall be affirmative defenses to a claim for occupational hearing loss and not a part of the claimant's burden of proof in a claim."  77 P.S. §513(8)(x).

At a hearing on January 12, 2016, the parties agreed to bifurcate the proceeding in order to address Employer's affirmative defense and determine whether Claimant's work exposed him to long-term hazardous occupational noise for purposes of Section 306(c)(8)(x) of the Act.[2]

Employer presented the February 15, 2016 deposition testimony of Andrew Brian Seal, a certified occupational hearing conservationist. Seal testified that he performed a 7-hour-and-13-minute noise dosimetry test with Claimant during his shift at the Snyder Bore Mill on November 20, 2015, which excluded Claimant's time at the beginning of the shift to setup and time at the end to shower. WCJ's Finding of Fact (F.F.) No. 5c. He stated that Claimant confirmed that there was no noise exposure during the preparation period. F.F. No. 5h.

Seal explained that he placed a noise dosimeter on Claimant's shoulder with a microphone facing out to record sound data throughout the test period. F.F. No. 5b. Seal noted that while Claimant wears ear protection, the dosimeter records noise as if Claimant was not wearing hearing protection. He said that the dosimeter takes a reading about every 10 seconds and is set at parameters according to the Pennsylvania standard, "the 90 decibel threshold and 90 criterion level, and then the 5 decibel doubling rate." R.R. at 44a. Regarding the "doubling rate," Seal explained that as noise increases 5 decibels, the amount of power that hits the ear is doubled. *Id.*

---

[2] Section 105.4 of the Act, added by the Act of February 23, 1995, P.L. 1, defines the term 'hazardous occupational noise' as "noise levels exceeding permissible noise exposures as defined in Table G-16 of OSHA Occupational Noise Standards, 29 CFR 1910.95 (relating to occupational noise exposure) (July 1, 1994)." 77 P.S. §25.4. "By incorporating OSHA's occupational noise exposure standards, section 105.4 allows exposure up to ninety decibels for an eight-hour day before such exposure is considered hazardous." *Joy Mining Machinery Co. v. Workers' Compensation Appeal Board (Zerres)*, 8 A.3d 444, 446 n.1 (Pa. Cmwlth. 2010).

3

Seal testified that the test results reflected spikes above and below 90 decibels, with Claimant having an average exposure of 83.6 decibels time-weighted over an 8-hour shift. F.F. No. 5d. He said that based on the decibel doubling standards, Claimant would have been exposed to approximately 40 percent of the allowable time-weighted average dosimetry noise exposure. *Id.*; R.R. at 53a. Seal stated that even if Claimant's exposure had been doubled, it would still be below the permissible Pennsylvania standard. F.F. No. 5f. He explained that gaps in the readings indicated times when the noise level was below the 70-decibel level that the dosimeter measured, and he added that Claimant wore the dosimeter during the entire day, including breaks for bathroom and lunch. F.F. No. 5c. Seal opined with a reasonable degree of scientific certainty that Claimant did not have noise exposure above the permissible Pennsylvania limit of 90 decibels over an 8-hour time-weighted shift. F.F. No. 5g; R.R. at 55a.

During cross-examination, Seal stated that when he performs calculations based upon the sampling results, he simply collects data and graphs it. F.F. No. 5j. With respect to Claimant's data, he confirmed that all of the peaks above 90 decibels were indicated on the graph. *Id.* He also testified that when he performs testing at a particular site, he talks to employees to determine whether the day is typical in terms of their hours and job duties. F.F. No. 5k. According to Seal, Claimant indicated that the workday fairly represented the job that he had been doing for more than a decade. *Id.* Seal acknowledged that he does not closely follow the individual being tested at all times throughout the day, but he arranges to check in with the employee periodically and ensures that the dosimeter is functioning properly. F.F. No. 5l; R.R. at 58a.

4

In a decision circulated July 8, 2016, the WCJ found that during the three years prior to the alleged injury date,[3] Claimant had an 8-hour time-weighted average of 74 decibels of noise exposure[4] and thus was not exposed to long-term hazardous noise pursuant to the Act. F.F. No. 7a. In so finding, the WCJ accepted Claimant's testimony as credible but not probative as to whether he was exposed to hazardous occupational noise. F.F. No. 7b. The WCJ accepted Seal's testimony as credible, probative, and persuasive, citing Seal's credentials, experience, expertise and cogent responses on cross-examination. F.F. No. 7c. Noting the absence of conflicting expert evidence, the WCJ stated that in order to reject Seal's testimony as not credible, he would have to "impermissibly usurp the role of the expert, supplanting that expert opinion with [a] lay person['s] unqualified perceptions or speculation." *Id.*

Based on those findings, the WCJ concluded that Employer met its burden to prove that Claimant had not been exposed to long-term hazardous occupational noise in excess of an 8-hour time-weighted average of 90 decibels for

---

[3] Section 306(c)(8)(viii) states:

> Whenever an occupational hearing loss caused by long-term exposure to hazardous occupational noise is the basis for compensation or additional compensation, the claim shall be barred unless a petition is filed within three years after the date of last exposure to hazardous occupational noise in the employ of the employer against whom the claim is filed.

77 P.S §513(8)(viii).

[4] We agree with the Board that the WCJ's mistaken finding that Claimant's time-weighted exposure level was 74 decibels, F.F. No. 7a, was harmless error where, as reflected in F.F. No. 7c, the WCJ clearly accepted the results of Seal's dosimetry testing.

three days per week for 40 weeks in any given year beginning three years prior to the asserted date of injury. WCJ's Conclusion of Law No. 4. Accordingly, the WCJ denied Claimant's claim petition. Claimant appealed to the Board, which affirmed the WCJ's decision.

On appeal to this Court,[5] Claimant argues that the WCJ erred in concluding that Employer met its burden to establish that he was not exposed to long-term hazardous occupational noise. We disagree.

As defined in Section 105.6 of the Act,[6] the term "long-term exposure" means "exposure to noise exceeding the permissible daily exposure for at least three days each week for forty weeks of one year." To prove the affirmative defense that a claimant was not exposed to long-term hazardous occupational noise, an employer must establish that:

> [the] claimant was not exposed to sound levels equal to or in excess of 90 dBA during the period the claimant is contending that he or she was exposed to long-term hazardous noise;
>
> if exposed to a noise level equal to or in excess of 90 dBA, the exposure during that period did not exceed the permitted daily exposure for three days a week for 40 weeks in any one year for which exposure to long-term hazardous noise is claimed.

*General Electric Co. v. Workers' Compensation Appeal Board (Bower)*, 734 A.2d 492, 496 (Pa. Cmwlth.1999).

---

[5] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed, or whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

[6] Added by the Act of February 23, 1995, P.L. 1, 77 P.S. §25.6.

Relying on *Joy Mining Machinery Co. v. Workers' Compensation Appeal Board (Zerres)*, 8 A.3d 444 (Pa. Cmwlth. 2010), and *Bower*, Claimant asserts that his exposure level varies from day to day and, consequently, one day of dosimetry testing is insufficient to establish that he was not exposed to noise "exceeding the permissible daily exposure for at least three days each week . . . ." Section 105.6 of the Act, 77 P.S. §25.6.

In support of its affirmative defense, the employer in *Bower* relied on testimony of the claimant's supervisor and the employer's manager of industrial hygiene. The supervisor described the employer's hearing protection program and employee training programs, but he admitted that the claimant's work area was one of the loudest in the workplace and that the claimant often did not wear hearing protection. The manager of industrial hygiene stated that he consistently monitored the noise level in the building where the claimant worked. He testified that the ambient noise levels in the claimant's building were generally below 85 decibels on average, with exceptions for certain jobs. He stated that testing was conducted on the claimant once and indicated that the claimant's noise exposure level was a time-weighted average of 86 decibels without hearing protection. He also testified that the noise level readings of three other employees in the claimant's work area were 87, 88, and 91 decibels, respectively.

The WCJ credited the testimony of the claimant's expert witness to find that the claimant had medically established that his hearing loss was caused by long-term exposure to hazardous occupational noise. The WCJ also credited testimony by the employer's manager of industrial hygiene concerning the employer's hearing conservation program and to show that the claimant was personally exposed to noise levels that exceeded 86 decibels in the course of his employment.

7

The employer appealed to the Board, which affirmed. On appeal to this Court, the employer argued that its manager of industrial hygiene had testified that the noise levels in the claimant's work area were under 90 decibels, which is acceptable under the standards referenced in Section 306(c)(8)(iv) of the Act, and, therefore, as a matter of law, the noise levels to which the claimant had been exposed could not have been hazardous. We rejected that argument, observing that: the employer conducted a test of the claimant's personal exposure to noise for just one day; the manager of industrial hygiene did not state that the noise intensity on that date was typical of the claimant's past exposure; and he admitted that the other employees in the claimant's work area tested at above 90 decibels on an 8-hour time-weighted average. Thus, we concluded that the WCJ did not err in finding that the employer failed to meet its burden under Section 306(c)(8)(x) of the Act.

In *Zerres*, the employer's expert testified that he tested five employees every month, including employees in the claimant's work area. The expert stated that he would attach a dosimeter to the employee in order to determine a time-weighted average of the noise level. The expert testified that none of the individuals tested in the claimant's department had a dosimetry reading above 90 decibels on a time-weighted average. However, he acknowledged that: the noise level would depend upon production at any given time; the use of different materials would cause different types and levels of noise; and production techniques and materials might be different on different days. Additionally, he did not know if noise levels exceeded 90 decibels on days he did not measure noise levels. 8 A.3d at 446-47.

The WCJ found the expert's testimony credible with respect to the employer's hearing conservation efforts, but found that it failed to credibly establish

8

that the claimant was not exposed to hazardous occupational noise. The WCJ granted the claimant's claim petition, and the Board affirmed.

On appeal to this Court, the employer argued that the WCJ improperly rejected the evidence of its expert's noise level studies. In affirming, we relied on *Bowers*, where the employer tested the claimant's exposure for just one day and the employer's witness "did not testify that the exposure was typical and would be the same on any other day." *Zerres*, 8 A.3d at 448. We noted in *Zerres* that the employer's expert had not conducted a test of the claimant's personal noise exposure, had acknowledged that noise intensity will vary from day to day depending on the production techniques used, and could not say whether noise levels exceeded 90 decibels at other times. Accordingly, we held that the WCJ could conclude that the noise level readings for other employees did not establish the claimant's individual exposure.

Claimant maintains that his noise exposure also varied from day to day and that, under *Zerres*, one day of testing is insufficient to establish his noise exposure over a 3-day period as required by the Act. However, in contrast to the facts in *Zerres*, in this case Claimant's personal noise exposure was tested. Additionally, Seal credibly testified that he confirmed with Claimant that the testing day was a typical workday. Further, the record does not support Claimant's assertions concerning variances in his noise exposure. Claimant testified that he spends his entire shift operating a Snyder Bore machine, except when he takes a break. He specifically described each machining cycle as lasting about a minute and 17 seconds, depending on the size of the wheel, and stated that the noise occurs for more than a minute of each cycle. R.R. at 18a-19a, 22a-23a, 29a-30a, 58a.

9

It is a fundamental tenet of workers' compensation law that the WCJ has complete authority over questions of credibility and evidentiary weight. *Lombardo v. Workers' Compensation Appeal Board (Topps Co. Inc.)*, 698 A.2d 1378 (Pa. Cmwlth. 1997). In this case, Employer's credible evidence was specific to Claimant's personal exposure to long-term hazardous occupational noise while he was performing his job in the location and manner in which he typically works. Although the results of Claimant's one-day's dosimetry test are not conclusive proof that Employer's affirmative defense was met, *Bower*, the WCJ did not err in relying on them to support his determination in this case.

Claimant also asserts that the WCJ improperly placed weight on the absence of expert opinion evidence to rebut Seal's testimony. Claimant argues that in doing so, the WCJ erroneously placed the burden on Claimant to present expert testimony in order to prevail on the issue of whether he was exposed to long-term hazardous occupational noise.

However, the WCJ gave multiple reasons for accepting Seal's testimony as credible and persuasive. F.F. No. 7c. In particular, the WCJ cited Seal's credentials and significant experience in his field of expertise. *Id.* The WCJ also noted that Seal's testimony reflected no intent to perform the evaluation in the role of a "hired gun." *Id.* The WCJ found that

> Seal cogently explained that while [ ] additional testing may have shown some slight variability in the results, such slight variability would not have been sufficient to change the results that [] Claimant was not exposed to long-term hazardous noise for purposes of the present litigation, confirming his opinion that the testing was conducted within acceptable scientific, Pennsylvania and OSHA standards.

10

*Id.* In light of the WCJ's detailed reasons for his credibility determination,[7] we conclude the WCJ's statement that he would not reject Seal's uncontradicted expert opinion in favor of his own "unqualified perceptions or speculation" does not reflect legal error.

Because the WCJ's findings reflect a proper exercise of his authority over questions of witness credibility and evidentiary weight, the WCJ did not err in concluding that Employer met its burden of proof under Section 306(c)(8)(x) of the Act.

Accordingly, we affirm.

---

[7] Section 422(a) of the Act states:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

11

_____
MICHAEL H. WOJCIK, Judge


Judge McCullough did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Enoch Ferencz, : 
  : 
            Petitioner : 
  : 
      v. : No. 1019 C.D. 2017
  : 
Workers' Compensation Appeal : 
Board (Standard Steel, LLC), : 
  : 
         Respondent : 

## O R D E R

AND NOW, this 10th day of April, 2018, the order of the Workers' Compensation Appeal Board, dated June 30, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge